Okey, J.
The following positions are shown by the authorities to be impregnable.
1. In Ohio, as under the federal government (U. S. v. Hudson, 7 Or. 32; U. S. v. Coolidge, 1 Wheat. 415 ; U. S. v. Britton, 108 U. S. 197), we have no common law offenses. No act, however atrocious, can be punished criminally, except in pursuance of a statute or ordinance lawfully enacted. This proposition was not established without prolonged discussion. *386 In Ohio v. Lafferty, Tappan, 81 (1817), it was held in an able opinion by Judge Tappan, that common law crimes are punishable in Ohio; but Judge Goodenow, a member of this court under the former constitution, in his work entitled “ Historical Sketches of the principles and maxims of American Jurisprudence, in contrast with the doctrines of the English common law, on the subject of crimes and punishments” (1819), completely refuted the soundness of that view, and'it is now perfectly well settled that Ohio v. Lafferty is not law. Key v. Vattier, 1 Ohio, 132, 144; Winn v. State, 10 Ohio, 345; Vanvalkenburgh v. State, 11 Ohio, 404; Allen v. State, 10 Ohio St. 287, 301; Smith v. State, 12 Ohio St. 466, 469; Knapp v. Thomas, 39 Ohio St. 377, 385.
2. In order that this statmentmay not mislead, it is proper to say, that while the rule is well settled that a statute defining .a crime and prescribing punishment therefor must be strictly construed (Denbow v. State, 18 Ohio, 11; Hall v. State, 20 Ohio, 1; Shultz v. Cambridge, 38 Ohio St. 659), still, where the legislature, in defining a crime, adopts the language employed by writers of recognized authority in defining the crime at common law, the presumption is that it was intended the commission of acts which at common law would constitute such crime, should constitute a crime under the statute, and the statute will be so construed. Accordingly it was held in Ducher v. State, 18 Ohio, 308, that where the- defendant obtained entrance into a house by fraud, with intent to steal, he entered “ forcibly and, on the same principle, it was held in Turner v. State, 1 Ohio St. 422, that where, by putting a person in fear, money is taken, not from his person, but from his presence, the money being under his immediate control, the crime of robbery is shown, within the meaning of the statute which punishes taking money “from the person of another.”
3. There being no common law crimes or punishment in Ohio, nor any such thing as “ corruption of blood or foi’fei-ture of estate” (Const. Art. 1, § 12), felony and feloniously ' are with us words without meaning, except as their import is fixed by statute. “ The term felony,” said Bartley, J. ih *387 Matthews v. State, 4 Ohio St. 539, 542 (1855), “lias no distinct and well defined meaning applicable to our system of criminal jurisprudence. In England it lias a well known and extensive signification, and comprises every, species of crime which, at common law, worked a forfeiture of goods and lands. But under our criminal code, the word felonious, although occasionally used, expresses a signification no less vague and indefinite than the word criminal.” And see Hess v. State, 5 Ohio, 1, 13.
4. Attaching to the word felony a meaning wholly at variance with its meaning at common law, the statute provides: “ Offenses which may be punished by death or imprisonment in the penitentiary are felonies; all other offenses are misdemeanors.” 'Rev. Stats. § 6795. But, of course, this does.not assert or establish, in any sense, the common law distinctions between felony and misdemeanor.
5. The common law, with respect to merger in criminal cases, and the evils resulting from the law in that respect, have been thus stated by Lord Campbell: “ At common law, a person indicted for a felony which involved an assault, must have been wholly acquitted, although proved to have committed the assault charged in the indictment, and given in evidence by the crown as the means of committing the felony, if his attempt to commit the felony was not fully accomplished, or if a felony had been committed to which the assault did not conduce, or if no' felony had been committed or attempted. This was found to be extremely inconvenient ; for the prisoner, proved to have committed a grave offense of which he was accused, either got off with perfect, impunity, or a new indictment, was preferred against him for the same assault, and the same evidence was given against him before another jury. In the former event, public scandal was given by a failure of justice, and in the latter, the accused was unnecessarily harassed, and unnecessary expense and trouble were occasioned by a second trial.” R. v. Bird, 2 Den. 94, 216; s. c., 2 Eng. L. & Eq. 448, 526; 5 Cox C. C. 20. True, these indictments only charge misdemeanor at common law, and the doctrine of merger did not apply where both offenses were *388 misdemeanors; and although the offenses charged in these indictments are called felonies under our statute, for reasons already given and others. hereafter stated, the doctrine of merger has no application. ,,
6. In England and most of our states, the rule mentioned in the last two propositions has been abrogated by statute ; but, as we have seen, the rule was never in force in Ohio. Nevertheless, in 1869, the legislature made provision on the subject, which, in the Revised Statutes, is as follows : “ Upon any indictment the jury may find the defendant not guilty of the offense charged, but guilty of an attempt to commit the same, if such attempt is an offense; when an indictment charges an offense including different degrees, the jury may ñnd the defendant not guilty of the degree charged, and guilty of an inferior degree.” § 7316. This statute did not in terms enlarge' the powers of the court, as they existed at the time the statute was first enacted, and as it is remedial, and does not in terms abridge or limit the powers of the court as they existed at its passage, it should be construed as leaving to the courts the same powers they possessed at the time of its passage- — in other words, as declaratory of the law. As to the extent of those powers in this particular, we are not left in doubt. In Stewart v. State, 5 Ohio, 241, it appeared that Stewart had been placed on trial, charged in an indictment with assaulting another with intent to murder him, a crime then, as now, punishable by imprisonment in the penitentiary. He asked the court to charge the jury that they might, if the evidence justified such verdict, find him guilty of a simple assault. . The charge was refused, and for this error the court reversed the judgment. Lane, J.: “A jury may find a verdict of guilty for part, and acquit for the residue. . . . Where an accusation for a crime of a higher nature includes an offense of a lower degree, the jury may acquit for the graver offense, and return him guilty of the least atrocious. The cases and examples are collected in 1 Chitty’s Cr. L. 638, and there is no foundation in this country for the distinction made in England on this point between felonies and misdemeanors ; for here an indictment for the higher offense rather *389 adds to than subtracts from his privileges.” And seo Vanvalkenburg v. State, 11 Ohio, 404, 406. In Balcer v. State, 12 Ohio St. 214, where the prisoner was also placed on trial charged in an indictment with an assault upon another, Avith intent to murder him, Scott, C. J., said “Under this indictment the defendant might clearly have been found guilty of the assault charged, and not guilty of the murder and accordingly a conviction for the assault was sustained, the prosecuting attorney having, during the trial, entered a nolle prosequi as to the allegation of intent. In White v. State, 13 Ohio St. 569, the prisoner was charged in an indictment with maliciously shooting another with intent to wound him. By the verdict he was found not guilty of shooting with intent to wound, but guilty of an assault, and this court sustained the conviction. In Heller v. State, 23 Ohio St. 582, the prisoner was indicted for maliciously shooting another Avith intent to kill him. A conviction for an assault Avas sustained. The court said, the indictment “ contains all the elements of an aggravated assault, and an indictment charging the crime of maliciously shooting with intent to kill, necessarily includes all the elements of the offense of assault and battery. 2 Eng. L. & Eq. 522, 523. In such case, the rule that where the offense charged consists of different degrees, ‘the jury may find the defendant not guilty of the degree charged, and guilty of any degree inferior thereto,’ is applicable. Or. Code. § 168 ; 66 Ohio L. 312 (Rev. Stats. § 7316).” In Howard v. State, 25 Ohio St. 399, it appeared that the prisoner had been indicted for robbery and for an assault with intent to commit robbery, and-that the court had refused to charge the jury that he might, on such indictment, be found guilty of an assault and battery alone. For such refusal the judgment was reversed. In Marts v. State, 26 Ohio St. 162, it was held : “ On the trial of an indictment for murder, it is competent for the jury, where the evidence justifies it, to find the defendant guilty of an assault and battery only, and it is error to the prejudice of the defendant to instruct the jury otherwise.” In Barber v. State, 39 Ohio St. 660, the prisoner Avas convicted of maliciously cutting with intent to *390 wound, on an indictment charging him with maliciously cutting witli intent to kill. While apjjroving Heller v. State, the court reversed the conviction on the ground that the offense charged and that of which the prisoner was convicted, were of the same grade and punishable with equal severity, and that one of them was not included in the other as an “ inferior degree,” within the meaning of the statute.
7. This indictment was found under Rev. Stats. § 6820, which is as follows : “ Whoever maliciously shoots, stabs, cuts, or shoots at, another person, with intent to kill, wound or maim such person, shall be imprisoned in the penitentiary not more than twenty nor less than one year.” But the statute further provides (Rev. Stats. § 6823) as follows: “Whoever unlawfully assaults or threatens another, in a menacing manner, or unlawfully strikes or wounds another, shall be fined not more than $200 or imprisoned not more than six months, or both.” And “ when a fine is the whole or part of a sentence, the court or magistrate may order that the ]aerson sentenced shall remain confined in the county jail until the fine and costs are paid or secured to be paid, or the offender is otherwise legally discharged.” Rev. Stats. § 7327. And see Rev. Stats. § 1028.
Under the authorities cited in propositions 5 and 6, it is perfectly clear that Mitchell might have been lawfully convicted and punished on his first trial, under section 6823, by fine and imprisonment for an assault, on the evidence then offered, which evidence was also offered, and was essential to a conviction, on the last trial, the act of 'firing the pistol charged in each indictment and offered in evidence in each case, being the same identical act and not another or different act. Moreover, the maximum punishment under that section may be as severe as the minimum punishment under section 6820.
8. It being entirely certain that Mitchell could not be convicted on the last, trial without proving the identical assault for which he might have been lawfully convicted and fined and imprisoned on the first trial — the same identical assault being embraced and virtually charged in both indict *391 ments — the question is whether he had a right to plead the jeopardy in which he had been placed, in bar of the second prosecution.
9. The maxim, Nemo Ms funitur fro eodem delicto, has relation, as it found expression at common law, to felonies. In our former as well as our present constitution, the guaranty is, that no person shall “be twice put in jeopardy for the same offense” (Const, of 1802, art. 8, § 11; Const, of 1851, art. 1, § 10). “ The constitutional provision extends the common law maxim, which was limited to felonies, to all grades of offenses; and it is but the application to the administration of criminal justice, of a more general maxim of jurisprudence, that no one shall be twice vexed for one and the same cause. On this maxim rests the whole doctrine of res judicata.” The State v. Behimer, 20 Ohio St. 272, 276, White, J. ; 1 Bishop’s Or. L. §§ 990, 991.
10. In Price v. State, 19 Ohio, 423, the court re-asserted the rule first distinctly recognized in P. v. Vandercomb, 2 Leach C. C. 816, that if, in fact, the same identical act had been charged successively in two valid indictments, upon one of which the prisoner had been in jeopardy by a trial, and the evidencenecessaiy .to support the second indictment would have been sufficient to prove a legal conviction on the first, the plea of former jeopardy will be sustained to the last indictment, and otherwise not. No case, certainly no well considered case, can be found to the contrary. The cases in which the principle is asserted or recognized are very numerous, but we can do no more then cite a few of them. R. v. Elrington, 9 Cox C. C. 86; R. v. Stanton, 5 Cox C. C. 324; R. v. Yeadon and Birch, 9 Cox C. C. 91; R. v. Taylor, R. v. Cantwell, 11 Cox C. C. 261; R. v. Walker, 2 Moody & R. 446; R. v. Gould, 9 C. & P. 364; R. v. Bird, supra; R. v. Curran, 2 Ir. Jur. N. S. 235; Com. v. Sheldon, 6 Dane’s Abr. 731; Com. v. Roby, 12 Pick. 496; Bainbridge v. State, 30 Ohio St. 264; Com. v. Roberts, 1 Yeates, 6; Strous v. Com. 5 Barr, 83; Dinkey v. Com. 17 Pa. St. 126; Heikes v. Com. 26 Pa. St. 513; State v. Parish, 43 Wis. 395; State v. Smith, 43 Vt. 324; State v. Chaffin, 2 Swan, 493; State v. Colgate, *392 31 Kansas, 511; State v. Gleason, 56 Iowa, 203; Southworth v. State, 42 Ark. 270.
In R. v. Bird the plea was not sustained, but this was done solely on the ground that on the first trial Bird and wile could not have been convicted of the assault charged in the second indictment. Each of the judges of the queen’s bench and the common pleas, and each of the barons of the exchequer except Platt (who was absent),delivered an opinion, and all the opinions support the proposition as I have stated it. And so with Com. v. Roby, as will appear from Com. v. Drum, 19 Pick. 480; Com. v. Morey, 108 Mass. 433, 435, where Gray, J., said: “A conviction of an assault with intent to murder was held by this court to be no bar to an indictment for murder, before our statutes permitted a conviction of such an assault upon an indictment for murder. Com. v. Roby, 12 Pick. 496; St. 1805. c. 88, § 2; Rev. Stats, c. 137, § 11 and commissioners’ note; Gen. Stats, c. 172, § 16.” An attempt has been made to defend State v. Foster, 33 Ia. 525, which has been sometimes cited as opposed to this view, upon the grounds that the first conviction occurred before a justice of the peace, who had no jurisdiction of the higher offense. State v. Gleason, 56 Ia. 203; and see 1 Bishop’s Or. L. § 105S, note 7. A similar distinction was taken in Com. v. Curtis, 11 Pick. 134, but it is said there was no foundation for the distinction. 1 Bishop’s Or. L. § 1058, citing R. v. Walker, 2 M. R. 446; and see Com. v. Bosworth, 113 Mass. 200. In State v. Nichols, 38 Ark. 550, it was held that a prisoner could not plead to an indictment for maiming, his former conviction before a justice of the peace for assault and battery, for which offense the justice had jurisdiction to fine, but none to imprison. In Southworth v. State, 42 Ark. 270, however, the court refused to extend the principle to a case where the justice had power to imprison, and accordingly the court held, in the latter case, that a conviction of petit larceny before a justice of the peace is a bar to a prosecution by indictment for grand larceny in the circuit court. The nisiprius cases of R. v. Gisson and R. v. Goodby, briefly reported in 2 C. & K. 781, 782, note (a), were controlled by the common law distinction *393 between felony and misdemeanor (1 Bishop’s Cr. L. § 804, note 8 ; 2 Russ. Cr. 62, note ; Whart. Cr. PI. & Pr. § 261, note 2), and so it was with R. v. Dungey, 4 F. & F. N. P. 99, as appears from the report of that case.
11. Nothing is more clearly settled than that the jeopardy attaches the moment the jury is sworn, and that if the jury be thereafter discharged without a verdict, where no legal ground of discharge is shown, the effect will be precisely the same as if a verdict of acquittal had been rendered. Hurley v. State, 6 Ohio, 889 ; Mount v. State, 14 Ohio, 295; Poage v. State, 3 Ohio St. 230; Baker v. State, 12 Ohio St. 214; Dobbins v. State, 14 Ohio St. 493 ; Stewart v. State, 15 Ohio St. 155; Hines v. State, 24 Ohio St. 134, and see 1 Bishop’s Cr. L. §§ 1015, 1016.
12. But the right to insist on the discharge of a jury as a virtual acquittal, will be defeated, where the prisoner actually or in effect consents to the discharge (Stewart v. State, 15 Ohio St. 155), or was guilty of such fraud with respect to his trial that ho was never in real peril of a conviction, or where he was so sick as to be unable to remain in court. The death or sickness of the presiding judge or a juror, or the ending of the term before the trial is finished, warrants such discharge of the jury. So, where it appears from the record that the jury remained together without agreement such length of time that it was rendered reasonable and probable that they could not agree, such jury may be lawfully discharged. Dobbins v. State, Hines v. State. And see generally as to the question whether there has been jeopardy, 1 Bishop’s Cr. L. §§ 1012, 104T.
13. The Ohio cases bearing upon the last two propositions (11 and 12) are instructive, and they leave no doubt as to the law of Ohio with respect to the effect of the discharge of a jury unless by consent, or in case of inevitable necessity. We will state the view expressed in a few of them. In Mount v. State, 14 Ohio, 295, the indictment was stolen after a verdict of guilty, and instead of supplying it by proof of its contents, the prosecuting attorney moved the court to set aside the verdict, which motion having been granted, he en *394 tered a nolle prosequi by leave of court, and the prisoner pleaded the jeopardy to another indictment for the same offense. The plea was not sustained and the prisoner was convicted, but the supreme court reversed the judgment, holding that “after the jury is impaneled and sworn, if a nolle prose-qui be entered, with leave of the court, and without the consent of the prisoner, it is a good bar to another indictment for the same crime.”
In Poage v. State, 3 Ohio St. 230, the jury, after deliberating some time, informed the judge by a note that they were unable to agree, and he thereupon discharged them. The record did not disclose the fact that it was reasonable or probable that the- jury could not agree. This court held, that under such circumstances, the plea of jeopardy might well be pleaded in bar of another trial. Thurman, C. J., said: “ That a jury might be discharged by the court in a criminal case, where they cannot agree, without its operating to accpiit the accused, was expressly decided in Hurley's case, 6 Ohio, 399, and we are not disposed to question that decision, supported as it is by numerous authorities, although decisions of an opposite character may be cited against it. . . That the power to discharge is a most responsible trust, and to be exercised with great care, is too obvious to require illustration. ‘It is a discretion,’ said Mr. Justice Story, ‘to be exercised only under very extraordinary and striking circumstances.’ 2 Gall. 364. ‘The power,’ said the same judge, ‘ ought to be used with the greatest caution, under urgent circumstances, which would render it proper to interfere.’ U. S. v. Perez, 9 Wheat. 580. ‘I am of opinion,’ said Chief Justice Spencer, ‘ that, although the power of discharging a jury is a delicate and highly important trust, yet that it does exist in case of extreme and absolute necessity.’ People v. Goodwin, 18 Johns. 187. That the discretion is a ‘ legal discretion, and to be exercised according to known rules,’ was - expressly held in McKee's case, 1 Bailey, 651, recognized in Mount v. State, 14 Ohio, 304.” P. 238.
In Baker v. State, 12 Ohio St. 214 (1861), where, after the jury had been sworn and the prisoner was on trial upon an in *395 dictment charging him with an assault with intent to murder, the prosecuting attorney, by leave of court, but without the prisoner’s consent, entered a nolle prosequi as to the intent, this court sustained a conviction for the assault, but Scott, C. J. said: ‘'In such a criminal prosecution, after the jury is impaneled, we think there is no doubt that the defendant has a right to demand such a disposition of the case, either by verdict of the jury or otherwise, as will constitute a bar to another prosecution for the same crime. If during the trial a nolle prosequi be entered to any part of the indictment, without the consent of the defendant it operates, so far, as an acquittal.”
In Dobbins v. State, 14 Ohio St. 493, it is asserted in the syllabus that the power to discharge before verdict, against the prisoner’s consent, “ only exists in case of absolute necessity, and when the jury have considered the case for such length of time as to leave no reasonable expectation that they will be able to agree upon a verdict.” The rule is correctly stated by Ranney, J., in that case, to be, that the jury may be lawfully discharged without prejudice to another trial, where “ insuperable obstacles have intervened to prevent a result upon the first attempt at a trial. On the other hand,” said he, “it is perfectly well settled, “that where the state intervenes without such necessity, and prevents a verdict, the accused cannot be subjected to a further trial consistently with the constitutional guaranty,” and that the rights of the accused can only be protected “ by making any interference, on the part of the government, by which a verdict is prevented, while a reasonable hope remains that one may be rendered, an absolute bar to his further prosecution.” P. 500.
In Stewart v. State, 15 Ohio St. 155, it appeared that after the jury had been sworn and the trial commenced, the fact was disclosed that one of the jurors had been a member of the grand jury which found the indictment a true bill; but the prisoner refused to waive the objection to the juror, and so, as the court held, virtually consented to discharge the jury. Speaking as to the posture of the case, if the prisoner had not insisted on his objection to the juror, Scott, J., said: “At *396 that stage of the proceedings the defendant had a right to demand such disposition of the case, either by the verdict of a jury or otherwise, as would bar another prosecution for the same crime. Of this he could not be deprived, at the will of the court or the prosecuting, attorney, by the entry of a nolle j'prosequi or the discharge of the jury, without an absolute necessity therefor. Such action, taken without his consent, would operate as an acquittal and be a bar to any further or subsequent prosecution for the same crime. To hold otherwise would be to contravene the constitutional guaranty against being twice put in jeopardy for the same offense.”
In Hines v. State, 24 Ohio St. 134, the case of Robbins v. State was approved. The case is, in its leading features, identical with Poage v. State. Hines was indicted in the court of common pleas of Lucas county for receiving and concealing a horse and buggy, knowing them to have been stolen. Ho pleaded not guilty and was placed on trial at the October term, 1873, and a trial was had, and the jury having heard the evidence, arguments of counsel and charge of the court, retired to deliberate fifteen minutes before four o’clock in the afternoon. At six o’clock p. m., the jury not having agreed, the court directed the sheriff to keep them together until 11 o’clock p. m. when, if they had not then agreed upon a verdict, he should discharge them.- The jury was kept together by the sheriff until half after eleven, when having failed to agree, he discharged them. At the February term, 1874, Hines relied on such discharge as a bar to another trial, but the court held the discharge was authorized by law, and Hines was convicted and sentenced to the penitentiary. This court reversed the judgment and discharged the prisoner, holding that, notwithstanding the jury had deliberated on the case, after its final submission, for nearly eight hours, yet as the jury was discharged without inquiry by the presiding judge as to the probability of agreement, and as the record did not disclose any l-eal and urgent necessity for the discharge, the prisoner was virtually acquitted. Mcllvaine, J., forcibly stated the law as to the discharge of the jurors, as follows: “It is only when they have been kept so long to- *397 gefcher that, under the circumstances, there remains no reasonable expectation, in the mind of the court, that they will be able to agree, that a legal necessity for their discharge arises; and until such necessity does exist in the case, it is the constitutional right of the accused to insist upon a verdict; and when the right is disregarded, by a discharge of the jury without his consent, such discharge is equivalent to a verdict of acquittal.” ,
14. That independently of statutory provisions, the discharge of the jury on Mitchell’s first trial would operate as an acquittal, will abundantly appear from the cases abstracted in the last (18th) pi’oposition, and numerous other cases that might be cited. But there was, at the time of such discharge, and still is, a statute (Rev. Stats. § 7303) which provides : “ If it appear, at any time before verdict, that a mistake has been made in charging the proper offense in the indictment, the jury may be discharged, without prejudice to the prosecution, and the accused, if there is good cause to detain him, may be recognized to appear at the next term of the court, or, in default thereof, committed to jail; and in such case the court may recognize the witnesses for the state to appear at the same time and testify.”
Obviously, in our opinion, this provision should be construed as applying to cases in which thére could be no conviction on the indictment on account of variance between the proof and allegations. In such case, where the evidence discloses the fact that the prisoner has committed a crime of which he cannot be convicted on that indictment, the presiding judge is made a committing magistrate, so as to prevent a failure of justice, through the escape of one who ought to be punished. Suppose the second grand jury had returned an indictment for an assault only. Could Mitchell have been lawfully convicted on such an indictment, notwithstanding he might have been convicted of the same assault on the first trial 1 I submit, the statute cannot receive the construction contended for by the state; but aside from that, it is the duty of the court to so construe the provision that it will *398 be valid. It is clear that, construed as contended for by the state, the provision would be plainly unconstitutional.
We must look to the condition of the law as it existed in 1802, when it was ordained that no person “ shall be twice putin jeopardy for the same offense,” which guaranty was re-asserted, in the same words, in our present constitution ; and as to the state of the law, in the particular we are considering it, there was no uncertainty in this state. Plainly, according to all the cases, a discharge under such circumstances, operated then as an acquittal; and the constitutional provision having been adopted with that principle incorporated in it, the legislature cannot alter or abridge it.
In State v. Behimer, 20 Ohio St. 572, 577, in speaking of the constitutional provision which protects every person accused of crime from being placed twice in jeopardy for the same offense, White, <L, stated in very clear terms,, that “ the object of incorporating it into the fundamental law was to render it., as respects criminal cases, inviolable by any department of the government.” Mr. Bishop, seeming to anticipate such legislation as the state claims section 7303 to be, uses this language in his Criminal Law, vol. 1, § 1019 : “ If the jeopardy only began on the rendition of the verdict, the constitutional provision could have, no force against a statute enacted to override .it’ Should the legislature direct (what the court might as well do without the direction), that, whenever the evidence appeared to the judge to be insufficient to convict, he should discharge the jury without taking a verdict, and hold the defendant to another trial before another jury, no protection against any number of trials and any amount of harassment would be afforded to defendants, so long as this interpretation of the constitution prevailed.” In short, such legislative interference can only be sustained when, losing sight of. the true meaning of our constitutional provision, we hold the general assembly to be clothed with all the powers of parliament over this subject.
People v. Hunckeler, 48 Cal. 331, is instructive upon this question. The constitutional provision in California is in the same words as our constitution. The penal code provided :
*399 “ If it appears by the testimony that the facts proved constitute an offense of a higher nature than that charged in the indictment, the court may direct the jury to be discharged, and all proceedings on the indictment to be suspended, and may order the defendant to be committed or continued on, or admitted to bail to answer any indictment whicli may be found against him for the higher offense. If an indictment for the higher offense is found by the grand jury impaneled within a year next thereafter, he must be tried thereon, and a plea of a former acquittal, to such last found indictment, is not sustained by the fact of the discharge of the' jury on the first indictment.” § 1112. “ If the defendant Avas formerly acquitted on the ground of variance between the indictment and the proof, or the indictment was dismissed upon an objection to its form or substance, or in order to hold the defendant for a higher offense, without a judgment of acquittal, it is not an acquittal of the same offense.” § 1021. The jury having been duly impaneled and sworn on the trial of Hunckeler, indicted for manslaughter, and the evidence having been heard, the presiding judge, being of opinion that the offense was murder, ordered the jury to be discharged, and' directed that the matter be submitted to another jury, the court assuming to act under the statute, and the defendant objecting. The new grand jury having returned an indictment for murder, the prisoner pleaded thereto the former jeopardy, and the supreme court held the plea to be good, notwithstanding the statutory provisions, and discharged the defendant. And see Williams v. State, 42 Ark. 85.
In harmony with People v. Hunckeler, is the case of Com. v. Williams, 78 Ky. 93, in Avhich the court of appeals held the following section of the criminal code of Kentucky to be in conflict Avith the provision against second jeopardy in the constitution .of that state : “ The attorney of the common-Avealth, with permission of the court, may at any time before the case is finally submitted to the jury, dismiss the indictment as to all or any part of the defendants, and such dismissal shall not bar a future prosecution for the same offense.” There, 'Williams was placed on trial on an indictment for *400 grand larceny. With respect to part of the property, there was a misnomer as to the owner, and the defendant, by reason of that fact, could not be found guilty of grand larceny, but might have been found guilty of petit larceny with respect to that part of the property properly described. The commonwealth’s attorney, by permission of the court, but without» the prisoner’s consent, dismissed the indictment for grand larceny, and another indictment for grand larceny, properly describing all the property, and correctly alleging the names of the owners, having been found by another grand jury, Williams pleaded "thereto the former jeopardy, and the court of appeals sustained the plea and discharged the prisoner, holding, as already stated, the provision quoted from the criminal code of that state to be unconstitutional. The case is directly in point, though it is not necessary here, as it seems to have been there, that the statutory provision should be held to be unconstitutional. And see, as asserting kindred principles in denying to the legislature authority to abridge constitutional guarantees or powers, U. S. v. Klein, 13 Wall. 128, 148; State v. Hipp, 38 Ohio St. 199, 221; Sutherland v. Governor, 29 Mich. 320; Monroe v. Gollins, 17 Ohio St. 665; Knapp v. Thomas, 39 Ohio St. 377.
15. It follows therefore, necessarily, from the foregoing propositions, that the court of common pleas erred in sustaining the demurrer to the plea in bar; and this court, reversing the judgment of the court of common pleas, and proceeding to render the judgment which that court should have rendered, overrules the demurrer; and as the state does not desire leave to reply, but admits the truth of the averments in the plea, we hold that Mitchell is entitled to a discharge.

Judgment reversed and prisoner discharged.

JohNsoh, C. .1., and MoIlvaine, J., dissented.