22 U.S. 515 (1824)
9 Wheat. 515
LOVE, Plaintiff in Error,
v.
SIMMS'S lessee, Defendant in Error.
Supreme Court of United States.
February 23, 1824.
March 10, 1824.
This cause was argued by Mr. Eaton, for the *516 plaintiff in error,[a] and Mr. Harper, for the defendant in error.
Mr. Justice JOHNSON delivered the opinion of the Court.
This cause comes up from the Circuit Court for the district of West Tennessee. The judgment in that Court is in favour of the plaintiff in ejectment, and error is brought to reverse that judgment, on the ground that the Court below instructed the jury that the plaintiff there had the better title, and ought to recover. The facts of the cause are exhibited in a bill of exceptions, and, so far as are necessary to illustrate this opinion, may be stated thus:
One Stockly Donaldson obtained a grant of lands of the State of North Carolina, in that region of territory which lies west of the Cumberland mountain, and now composes a part of West Tennesse. This grant issued upon an entry made in the office of John Armstrong.
After obtaining the patent, Donaldson executed a power of attorney to one Grant, to sell this land, and Grant accordingly sold it to one Allison, and executed a conveyance to him in due form. This deed bears date in 1795. But it appears, that two years previous to this sale, Donaldson himself had executed a title for the same land to one Adair. And the plaintiff in ejectment now makes title through Allison, while the defendant *517 protects himself under the conveyance to Adair, but without connecting himself with it.
If the case rested here, there would be no difficulty in it; but, by the laws of North Carolina, no deed passes an estate, unless it be recorded in the county in which the land lies, and that within twelve months of its date. In this instance, the subsequent deed claims precedence, on the ground of prior registration, after the twelve months prescribed to the prior deed, and, of consequence, at a time when the prior deed was supposed to be altogether void, for want of registration.
On the point of registration the facts are these. The act of 1715, which is the registering act alluded to, has been suspended, as to the limitation of time, almost ever since its enactment. A similar provision in the land laws of that State, on the subject of registering grants, has also been the subject of a similar suspension. But as there was no County Court embracing within its jurisdiction that region of country in which this land lay, a new provision is introduced into the suspending act of 1788, by which it is enacted, that persons owning lands of this description, shall register them in the counties in which they reside; and a proviso, as to non-residents, is inserted, in these words: "Provided always, that persons owning such lands in this State, west of the Cumberland mountain, and not residing therein, shall register their grants for such lands in Hawkins county."
The holder of the junior conveyance from Donaldson, availed himself of this proviso, or (more properly speaking) enacting clause, and recorded *518 it, with all his muniments of title, in Hawkins county. This took place in the year 1797, but the defendant below, the holder of the senior title from Donaldson, did not record his title until the year 1806, when, the State of Tennessee having created a county embracing this land, he committed his deed to registration in the county where the land lay; which was also done by the plaintiff below, four years afterwards. If, then, the registration in Hawkins county was a valid registration, and the effect of it was to vest the estate, to the prejudice of the prior conveyance from Donaldson, the plaintiff had the better title, and the charge was correct.
This question will now be examined.
It is obvious, that to attribute to the registration in Hawkins county the effect here contended for, it is necessary,
1. To attach to the provisions of the 5th section of the act of 1788, a variety of incidents, and to give it a latitude of construction which nothing but the unequivocal intent of the Legislature could countenance. The word land must be taken to mean muniments of title; the word grant, both patents and mesne conveyances; and words of enactment, which, in their direct and ordinary signification, are solely imperative, must be considered as importing a privilege or exemption. Besides which, all the provisions of the 5th section of the act of 1715, must be incorporated with the 5th section of that of 1788, in order to sustain the implication, that recording in Hawkins county shall make the one valid, or the failure to record in that place *519 be fatal to the other. This view of the subject would lead to a protracted and subtle discussion, which the conclusions of this Court on other points, render now unnecessary to be pursued; and the subject is only noticed, to avoid the implication, that this Court has acquiesced in such a construction of the clause in question.
2. To give effect to the registration in Hawkins county, it is also obvious, that the 5th section of the act of 1788 must have continued in force until 1797, when the deed to Allison was recorded in that county. And this must either be inferred from the words of the section itself, or must be the effect of the subsequent reviving acts.
In their ordinary and direct signification, the words of the section in question certainly import perpetuity; and did it stand alone, such would be the effect given to it, whether in its operation it be considered imperative or remedial. But the context necessarily limits its duration. Both the title and preamble of the act, declare it to be to relieve persons, who would be sufferers from neglecting to record their muniments of title in due time. And it would be hard to conceive a reason why grants and mesne conveyances elsewhere, should be forced upon record within a limited time, and those for lands in this district of country left without limitation as to time. While there was no office assigned for their registration, a reason existed; but that reason is taken away, when we admit that a proper office was opened for that purpose.
The question, however, does not rest here; a *520 recording law, unlimited in point of time, and unaffected by penalties, is an absurdity, since it destroys its own views, when it leaves the individual at large, to record or not, as he pleases. And if an additional proof be wanting, to indicate the sense of the Legislature in passing this section of the act of 1788, it is to be found in the reviving act of North Carolina, of 1790, in which it is expressly declared, that the act of 1788 would expire, if not then revived. The idea, therefore, of its being perpetual, in its own provisions, is rejected; and it remains to inquire, whether it was continued in force up to 1797, when the deed to Allison was recorded in Hawkins county. This must depend upon the several reviving acts passed subsequent to 1788. And it is perfectly clear, upon collating those acts, that the 5th section of the act of that year had expired, and was dropped, before Allison's deed was registered. In 1790, the State of North Carolina passed a law, reviving, for two years, the act of 1788, with all its provisions; but the State of Tennessee had previously been separated from North Carolina, and the provisions of the 5th section of the act of 1788, appear never to have been taken up in Tennessee.
It is not necessary, in arriving at this conclusion, to examine whether the words of the section shall be restricted to grants, or extended to mesne conveyances, or whether to deeds prior or subsequent. In no point of view will this section sustain the registration; for the deed is registered as a mesne conveyance, not a grant, properly so called, and *521 must take effect under those legal provisions which extend to mesne conveyances.
The act which purports to revive the act of 1788, is that of Tennessee, of 1794; and by that, the right of recording out of the county where the land lies, is wholly dropped. The general words of the act of North Carolina, in 1790, are not adopted; but the right of recording again, is explicitly brought back to the general policy of the country, that of recording titles in the county where the land lies.
The question will, no doubt, here occur, whether the Legislature could have intended to impose this duty, while there was no county, and no Court, in which such record could be made.
The answer is, that the question is here immaterial, since it is enough for all the purposes of the defendant below, if the obligation to record did not exist at all, until there was a county established; but were it otherwise, the only question here is, whether the provisions of the act of 1794, or any other act prior to 1797, revives the supposed right to record in Hawkins county; whether it grants a privilege, or imposes a duty, as to that particular county, and the right of recording in any other place than where the land lies.
The act of 1796, which is that under the immediate protection of which it is necessary that Allison's deed should be sustained in favour of the plaintiff below, contains a simple revival of the act of 1794, without any farther provision. Its meaning and effect, therefore, must be read upon the face of the latter act.
*522 There were some other points made in the argument, which, as the cause must be sent back, it is proper to notice.
At one, if not two periods, of the early history of Tennessee, there occurred an interval of time, during which the suspending laws, as they are called, did not exist, and that of 1715, of course, operated upon all cases within it. That State passed from the jurisdiction of North Carolina in 1790, but its first territorial Legislature did not meet until 1794. By a provision of the act of separation, the laws of North Carolina became the laws of Tennessee, until repealed by the Legislative authority of the ceded territory, of, it is presumed, until they expired by their own limitations. Whether an hiatus occurred in these suspending laws, at the interval of time, is immaterial in this cause, since the junior deed did not come into existence until after the passage of the act of 1794. But between the sessions of 1800 and 1801, there did occur a chasm in these suspending laws, which chasm, the defendant in error contended in argument, put an end to the interest claimed under the prior deed altogether.
It is obvious, that this argument assumes for its basis the supposition, that the registration of his deed in Hawkins county was valid and effectual to this purpose. The opinion has been expressed, that the 5th section of the act of 1788, was not in force at the time when that registration was made. And the Court now recurs to the subject, only to avoid the imputation of having admitted the conclusion in favour of the defendant in error, had the *523 registration in Hawkins county been made while the law was in force. We give no opinion on the operation of the act of 1715, on titles to those lands which were so situated that it was impossible for the provisions of the act of 1715 to be complied with; that is, those lands which lay in no designated county. In the present instance, the land in controversy was not included within a county line, until the year 1801. As both deeds were registered in the proper county, after the chasm occurred, they are both equally affected by it; and it has no bearing upon their interests, as made out under the registration where the land lies.
Another point made in argument, was, that the defendant could not protect himself under the title to Adair, without connecting himself with it. Upon recurring to the words of the charge, we find it to be, that the plaintiff below had the better title. From this, an inference undoubtedly arises, that if the defendant below had exhibited a better title, the plaintiff could not recover, even though the defendant did not show that better title to be transmitted to himself.
Since the registration in the county where the land lies, and which is the only registration deemed valid in this cause, gave the prior registration to the prior deed, and thus took away every claim to precedence from the deed under which the plaintiff below made title, the Court must be adjudged to have erred in its charge upon that subject. On the implied proposition, that the better title might be set up, as a shield against the plaintiff's *524 recovery in ejectment, even though the defendant does not show that better title in himself, we will limit ourselves to the following remarks:
The rule of law, that a plaintiff must recover by the strength of his own title, and not the weakness of his adversary's, must be limited and explained by the nature of each case as it arises. Since the rule is universal, that a plaintiff in ejectment must show the right to possession to be in himself positively, and it is immaterial as to his right of recovery, whether it be out of the tenant or not, if it be not in himself, it follows that a tenant is always at liberty to prove the title out of the plaintiff, although he does not prove it to exist in himself. Possible difficulties may be suggested as to the application of this principle to mere tort feasors or forcible disseisors; but besides that such cases, being generally provided for under statutes of forcible entry, must be of rare occurrence, it is time enough, when they occur, to consider what exceptions they present to the general principle.
The last point proper to be noticed, is that made in the former argument, on the question of revocation of the power of attorney under which the junior deed was executed.
This was supposed to be virtually revoked by the prior conveyance of the same land, executed by Donaldson, who gave the power. And this, on general principles, is unquestionably correct. Whatever liabilities, for damages or otherwise, Donaldson might have incurred by not revoking the power by due notice, it is unquestionable, *525 that a power must cease and determine when there is nothing left for it to act upon. It will be seen, however, that this question resolves itself into the principal question in the cause, to wit, whether the first deed ever was a subsisting valid conveyance. If it was not, then the ground of the argument fails, for the estate had not, in effect, ever passed out of Donaldson; and if it was, then its effect is complete, without recurring to the ground of revocation.
Judgment reversed.
JUDGMENT. This cause came on to be heard, &c. On consideration whereof, this Court is of opinion, that the said Circuit Court erred in instructing the jury "that the lessor of the plaintiff had the better title to the land in controversy." It is, therefore, ADJUDGED and ORDERED, that the judgment of the said Circuit Court in this case be, and the same is hereby reversed and annulled: and it is further ORDERED, that said cause be remanded to the said Circuit Court, with instructions to issue a venire facias de novo.
NOTES
[a] He cited, Cro. Eliz. 321. 1 Burr. 119.