CASE 20—INDICTMENT—OCTOBER 7.

# Williams v. The Commonwealth.

APPEAL FROM GRAVES CIRCUIT COURT.

1. An indictment charged appellant in one count with grand larceny; in another with receiving stolen goods. To this he pleaded not guilty. Evidence was heard before a jury, and the Attorney for the Commonwealth moved to dismiss the indictment, which was done, against appellant's objections. Afterwards another indictment was found similar to the one dismissed, except that it charged a part of the property stolen belonged to Watson & Bough, while the first stated it belonged to Watson. Appellant pleaded former acquittal, and that he had once been in jeopardy.

2. The Court erred in refusing the plea. The last indictment is barred by the former proceedings.

3. Sections 243 and 252 of the Criminal Code, in so far as they authorize, after jeopardy attaches, the dismissal of an indictment for felony, so that it may not operate as a bar to a future prosecution for the same offense, are unconstitutional.

CROSSLAND & CROSSLAND FOR APPELLANT.

The second prosecution is barred by the first. (O'Brien v. The Commonwealth, 9 Bush, 333; Commonwealth v. Daniels, MS. Opin., 1876; Cooley on Constitutional Lim., 328; Tully v. Commonwealth, 11 Bush, 154.)

78 93
88 388
78 93
97 496
97 786

78 93
109 547

78 93
110 518

78 93
117 45
117 89

78 93
124 31

78 93
131 508

Williams v. The Commonwealth.

.P. W. HARDIN, ATTORNEY GENERAL, AND B. A. NEALE, COMMON-
WEALTH'S ATTORNEY, FOR APPELLEE.

'The Attorney for the Commonwealth may, with the permission of the
Court, dismiss an indictment at any time before the case is given
to the jury. (Section 243, Criminal Code; O'Brien v. The Common-
wealth, 9 Bush, 333; Wilson v. The Commonwealth, 3 Bush; Whar-
ton's Am. Crim. Law, 2d vol., sec. 1833.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

In April, 1879, appellant was indicted, and charged in
one count of the indictment with grand larceny, and in
another with receiving the same goods, knowing them to
have been stolen. To this indictment he pleaded not guilty,
and the evidence for the Commonwealth and the accused
having been heard, the Commonwealth's Attorney moved
to dismiss the indictment and refer it to the grand jury,
which motion the court sustained over the objection of ap-
pellant. Subsequently another indictment was returned, the
same as the one dismissed, with the exception that it charged
that a portion of the property stolen, instead of being the
property of J. D. Watson, as alleged in the first indictment,
was the property of J. D. Watson and Philip Bough. To
this last indictment appellant entered a plea of former ac-
quittal and once in jeopardy, and upon this plea evidence
was heard establishing the facts above stated, but the Court
refused to sustain the plea, and on a trial on the merits, ap-
pellant was convicted and sentenced to the penitentiary for
two years.

The first inquiry is as to the sufficiency of that plea.

The provisions of the Criminal Code that may be consid-
ered as bearing upon this question are as follows:

Section 243. ''The Attorney of the Commonwealth, with
permission of the court, may, at any time before the case is
finally submitted to the jury, dismiss the indictment as to all

or a part of the defendants, and such dismissal shall not bar a future prosecution for the same offense."

Section 251. "If, after retirement, one of the jurors become so sick as to prevent the continuance of his duty, or other accident or cause occur preventing them being kept together, or if, after being kept together such a length of time as the court deems proper, they do not agree in a verdict, and it satisfactorily appear that there is no probability they can agree, the court may discharge the jury; or if the sickness of a juror be temporary, the court may permit him to separate from the other jurors, and may place him in charge of an officer or not, in its discretion."

Section 252. "In all cases, if a jury be discharged, either in the progress of a trial or after the case is submitted to them, the cause may be again tried at the same or another term of the court."

As the argument of counsel had not been had and the court had not, with proper charge, finally submitted the case to the jury, the Attorney for the Commonwealth had a right, on motion and with the approval of the court, to dismiss the indictment, unless section 243 of the Criminal Code is unconstitutional.

The only provision of the constitution restricting the power of the legislature in this regard, relied upon by counsel for appellant, is the 14th section of article 13, which reads: "No person shall, for the same offense, be twice put in jeopardy of his life or limb."

In order to determine how far the cases from other states, cited by counsel, and the statements of the text-writers on this question, should be considered as authority in this state, it may be well to call attention to similar provisions in the constitutions of other states. We find that the constitu-

tions of Alabama, Delaware, Maine, Pennsylvania, and Tennessee contain clauses in the language of our constitution, while the other states, whose decisions are relied upon by appellant, have in their constitutions language of decidedly broader import. They contain such language as: "No person's life or liberty shall be twice placed in jeopardy for the same offense." "Shall not be twice tried for the same offense." "No person, after acquittal on the merits, shall be tried for the same offense."

As to the meaning of legal jeopardy under these various clauses, Mr. Cooley, in his work on Constitutional Limitations, page 327, says: "A person is in legal jeopardy when he is put upon trial before a court of competent jurisdiction, upon indictment or information which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance. And a jury is said to be thus charged when they have been empaneled and sworn." (Bishop on Criminal Law, secs. 1013, 1014.)

After a careful examination of all the reported cases within our reach, we conclude that the decided weight of authority is in support of the rule as thus stated. It was applied by this court in O'Brian v. The Commonwealth, 9 Bush, which was an indictment for murder. A graver question, however, arises when we seek to extend the constitutional provision to other than capital cases. The language, literally construed, limits the constitutional protection to "jeopardy of life or limb," which, according to a familiar rule of construction, should not be extended to embrace a case where liberty only is at stake. To thus narrow it, however, would leave the legislative power at liberty to authorize, in cases where the punishment is confinement in the penitentiary, a re-trial on the same charge, after the accused is once tried and

Williams v. The Commonwealth.

acquitted or convicted, for there is no other provision of the constitution that can be construed to interdict a re-trial or to sanction the pleas of former conviction and former acquittal. Such a construction would be at war with every sense of justice, subversive of civil government, and contrary to the whole theory of our institutions. There is nothing better settled in the jurisprudence of England or America than that no one can be twice tried for the same offense. No doubt has ever been expressed that a plea of former conviction or former acquittal might, in a proper case, be interposed. (Bishop on Criminal Law, section 1026.)

We think it far more reasonable to presume that the framers of the constitution intended that the interdiction should extend to all felonies or to all cases where the punishment inflicted is infamous. In this, as in all other cases of the construction of statutes, contracts, or constitutions, the thing sought for is the intention of those who make the law or the contract, the thought which is the vital principle, and this, generally, is to be gathered from the language used. This language, however, is to be taken in the sense in which it was ordinarily used and understood at the time the law was adopted or the contract made. That rule of construction is subject, however, to these qualifying restrictions: "Every statute ought to be expounded, not according to the letter, but according to the meaning." "Every interpretation that leads to an absurdity ought to be rejected." (11 Bush, 691, Bailey v. The Commonwealth.)

At the time of the adoption of the constitution, as now, the principle evidently intended to be covered by the words, "shall not for the same offense be twice put in jeopardy of life or limb," found expression in the following maxims of the

common law: "*Nemo debet bis vexari pro una et eadem causa*," applicable to civil cases—no man shall be twice vexed for one and the same cause; and in criminal law by the maxims, "*Nemo bis punitur pro eodem delicto*," "*Nemo debet bis puniri pro uno delicto*"—no one can be twice punished for the same crime or misdemeanor. (2 Hawkins' Pleas of the Crown, 377; 4 Coke R., 43*a;* 11 Ib., 93*b;* Proffatt on Jury Trials, sec. 475; 4 Blk. Com., 335.) It is manifest that the framers of the constitution had these several maxims in view when the clause referred to was adopted, and intended to embrace their spirit and essence in the expression used. In the State v. Connor (5 Coldwell, 315), commenting on a similar provision in the constitution of Tennessee, it is said: "It is clear the whole doctrine rests upon the principle that no man shall be put in peril of legal penalties more than once upon the same accusation." Such was the general understanding of the above-mentioned maxims, at the time of the adoption of the Constitution, and which were paraphrased in the provision quoted.

Mr. Justice Miller, in *ex parte* Lange (18 Wallace), commenting on the provision of the Federal Constitution, identical with the one quoted from the Constitution of this State, says: "It is very clearly the *spirit* of the instrument to prevent a second punishment under judicial proceedings for the same crime, so far as the common law gave that protection.

"If we reflect that at the time this maxim came into existence almost every offense was punished with death, or other punishment touching the person, and that these pleas are now held valid in felonies, minor crimes, and misdemeanors alike, and on the difficulty of deciding when a statute under modern systems does or does not describe a felony when it defines and punishes an offense, we shall see

ample reason for holding that the principle intended to be asserted by the constitutional provision must be applied to all cases when a second punishment is attempted to be inflicted for the same offense by a judicial sentence."

In the case of The State v. Connor, 5 Coldwell, above referred to, the facts are stated as follows: "The defendant was indicted for grand larceny, the indictment containing two counts, one for stealing $30 in United States Treasury notes, and the other for stealing $20 in National Bank notes, the property in each count being laid in J. P. Davis. The defendant being arraigned, pleaded not guilty: jury empaneled, evidence heard, argument of counsel completed, and jury charged, when, on motion of the Attorney General, the indictment was dismissed. At the same term the indictment was returned by the grand jury, in substance the same as the one dismissed, with the exception that the property was charged to be in J. P. Davis and Elijah Faust. To this indictment the defendant pleaded ' once in jeopardy.'"

We have already seen that the constitution of Tennessee has the same provision in reference to this matter as the constitution of Kentucky.

In the opinion it is said: " The *nolle prosequi* was entered without any lawful excuse whatever. The indictment was, to all intents and purposes, a valid one, and the supposed difficulty, as we infer from the record, was that the proof failed to sustain it." The 5127th section of the Code of Tennessee is then quoted, which is to the effect that when the property stolen belongs to two or more persons as partners, it is sufficient to charge that it is the property of any one of them, and the opinion concludes:

"It follows, therefore, that the discharge was wholly unnecessary, and without authority or consent of the prisoner,

and, by the well-settled doctrine, he cannot again be held to answer on a new indictment for the same offense."

In Regina v. Charlesworth, 101 English Law, 504, Chief Justice Cockburn says: "I entirely concur in this, . . . . . . that a jury shall not be discharged at the instance of the prosecutor in order to enable him to obtain evidence, of which at the trial there is a failure, is a sound and salutary rule, and ought not to be departed from."

In Proffatt on Jury Trials, section 490, it is said: "The result of the cases in this country and in England is, that a jury cannot be discharged in a capital case, and ought not to be in any criminal case, except upon the strictest ground of .necessity." Under the English practice, the action of the court in discharging a jury is held not to be the subject of review by the court to which an appeal is taken, but in America the decided weight of authority is the other way.

Mr. Cooley, on page 328 of his Constitutional Limitations, says: "If the first indictment or information were such that the accused might have been convicted under it on proof of the facts by which the second is sought to be sustained, then the jeopardy which attached on the first must constitute a protection against a trial on the second."

If the provision of the constitution referred to is to be extended to all felonies, as on principle and authority we think it should, there appears no reason why the action of the court in this case, in dismissing the indictment after the jury was formed and evidence heard, should not operate to discharge appellant. The indictment was substantially good. The evidence heard upon the second trial was the same heard upon the first; the goods charged to have been stolen were the same, and, as we have seen, the only difference in the indictments was, that in the first all the prop-

erty stolen was charged to be in J. D. Watson, while in the second a portion of the property was stated to be in J. D. Watson and Philip Bough. The indictments are identical in charging that "two pairs of shoes, of the value of five dollars, and one pair of gloves, of the value of two dollars," was the property of J. D. Watson. Upon the first indictment it is clear that a conviction might have been had, at least for petit larceny, and that such an acquittal or conviction would have been a bar to any other indictment for taking the same goods. Where a person, with the same intent and at the same time, took a horse, wagon, and harness, two indictments were found—one for stealing the horse and the other for stealing the wagon and harness. On trial for stealing the horse he was acquitted, and this was held a bar to the indictment for taking the wagon and harness. (Fisher v. Commonwealth, 1 Bush, 212.) When the facts are the same as to the circumstances constituting the offense, one convicted of assault and battery may plead this former conviction to an indictment for an affray. (Commonwealth v. McChord, 2 Dana, 242.) A fine for a breach of the peace is a bar to a subsequent indictment for an assault and battery. (Commonwealth v. Foster, 3 Met., 1.)

We are of the opinion that sections 243 and 252 of the Criminal Code, in so far as they attempt to authorize, after jeopardy attaches, the dismissal of an indictment for felony, so that it may not operate as a bar to a future prosecution for the same offense, are unconstitutional. It is, as a matter of course, to be understood that, even after jeopardy has attached, and in cases of necessity, an indictment may be dismissed or a prosecution discontinued without operating as a bar to a future prosecution for the same offense. The case

of O'Brien v. Commonwealth (9 Bush) fully discusses the circumstances under which such necessity may arise.

Wherefore the judgment is reversed, and cause remanded, with direction to discharge appellant from custody.