CASE 61—INDICTMENT—MARCH 23.

## Robinson v. Commonwealth.

APPEAL FROM TAYLOR CIRCUIT COURT.

FORMER JEOPARDY—INDICTMENT FOR BIGAMY.—After the accused in a felony case has been put upon trial, the discharge of the jury, save in case of necessity or by the consent of the accused, operates as an acquittal and bars another trial for the same offense. And while the accused may waive his right to object to a second jeopardy, he does not do so by merely remaining silent when the jury is discharged.

Robinson v. Commonwealth.

Upon the trial of an indictment for bigamy, it appeared that the name given in the indictment as that of the woman to whom the defendant was last married was not her real name, but that she was sometimes known by that name. The court *sua sponte* discharged the jury, dismissed the indictment and referred the case to another grand jury. The defendant did not object. An indictment was returned giving the real name of the woman, and upon the trial thereunder the defendant pleaded former acquittal. *Held*—That there was no necessity for discharging the jury upon the first trial, and, therefore, the action of the court operated as a bar to another trial.

R. S. MONTAGUE FOR APPELLANT.

Brief not in record.

P. W. HARDIN, ATTORNEY-GENERAL, FOR APPELLEE.

The defendant by failing to object to the discharge of the first jury waived his right to a trial by that jury, and can not now claim that the discharge of the jury operated as an acquittal.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Richard Robinson was indicted at the June term, 1888, of the Taylor circuit court for bigamy. The indictment charged him with marrying one Harriet Anderson in 1871, and while she was yet his lawful wife, and on March 22, 1888, with marrying one Mag White. At the indictment term he was put upon trial, the plea of "not guilty" entered, and a jury sworn to try the issue. The testimony for the Commonwealth having been heard in part, it appeared that the last-named woman had been divorced from one John White, her name prior to her marriage to him being Margaret Sharp; and that, at the time of her marriage to the accused, she was sometimes called Mag White and sometimes Mag Sharp. The court thereupon *sua sponte*, and over the objection of the attorney for the State, discharged the jury, and referred the case to another grand jury. The accused neither objected

nor consented to this being done. He remained silent.
This action of the court was had that he might be
charged with marrying Margaret Sharp. It is manifest
it was unnecessary. It had been shown that Mag Sharp
and Mag White were one and the same person, and that
she was called by both names. The jury were not dis-
charged, therefore, from necessity. The appellant was
reindicted at the January term, 1889, the new indictment
charging him with marrying Margaret Sharp; his wife,
Harriet, being yet alive. Upon trial under it he pleaded
not guilty, and former acquittal.

The former indictment, and the record relating thereto,
were put in evidence. It thus appeared that the accused
had formerly been put upon trial, and that it had pro-
gressed so far that a part of the testimony for the State
had been heard, when the court discharged the jury. It
was also shown upon the second trial, as it had been upon
the first, that Mag White and Mag Sharp were one and
the same person, she being called sometimes by the one
and then by the other name. The lower court refused to
either instruct the jury to acquit the appellant, or to give
any instruction as to the defense of former acquittal,
although it fully appeared that he was again on trial for
marrying the identical woman named in the first indict-
ment; and he, having been convicted, now claims that the
proceedings under the first indictment constituted a bar
to any further trial.

Section 14 of article 13 of our State constitution says:
" No person shall, for the same offense, be twice put in
jeopardy of his life or limb." It was held in Williams v.
The Commonwealth, 78 Ky. Rep., 93, that this provision

Robinson v. Commonwealth.

in spirit, and therefore in fact, embraced a case where liberty only is involved; and that it was intended to cover all felonies or cases where the punishment is infamous. In that case, after the jury had been sworn, and the testimony for the Commonwealth had been heard, its attorney moved to dismiss the indictment and refer the charge to another grand jury. There was no necessity for it. It was, however, done over the protest of the accused; and this court held that the former proceedings were a bar to a trial upon a second indictment. (See, also, 1 Bishop on Criminal Law, section 990.)

It is said, however, as is true, that in that case, and also in O'Brian v. The Commonwealth, 9 Bush, 333, the accused objected to the jury being discharged; and it is contended that, because the accused in this instance did not upon the trial of the former indictment protest against the jury being discharged and demand that it proceed to a verdict, he can not now rely upon the proceedings then had, in bar of a second trial.

The courts of the country have differed somewhat as to the interpretation to be given to the constitutional provision above cited, and which is also found in the constitution of the United States. Some have understood it as merely meaning that where a person has been tried upon a sufficient indictment, and a final verdict of acquittal or conviction been pronounced, he can not be tried again upon the same charge.

They have, therefore, held that one is not placed in jeopardy within the meaning of the organic law, save when there is a verdict of a jury and a judgment thereon; and that, therefore, no discharge of the jury during a trial will bar a second one. Others have, however, held

that the putting of the accused upon trial merely, is placing him in jeopardy within the proper meaning of the constitutional restriction; and that when this has been done, the discharge of the jury, save in case of necessity or by his consent, operates as an acquittal and bars a retrial.

That this last view is the proper one we have no doubt. It is the only one which renders secure this right, recognized by, perhaps, every system of jurisprudence now existing, or which has ever existed. This court has adopted it, and it accords with the current of authority. It is true that sections 243 and 252 of our Criminal Code attempted to authorize a dismissal of an indictment by the State's attorney, by the permission of the court, at any time prior to a final submission of the case to the jury, without its being a bar to another prosecution for the same offense; but these Code provisions, in so far as they attempted to authorize the dismissal of an indictment for felony, after jeopardy had attached, without its being a bar to a future prosecution for the same offense, were held in Williams v. The Commonwealth, *supra*, to be unconstitutional.

It must always be understood, however, that if the dismissal be from *necessity*, it does not operate as a bar to a further prosecution. This is necessary to the proper administration of justice. A juror may absent himself, or be taken sick, or die; so, too, may the judge; or the prisoner may become too ill to proceed, or it may be impossible for the jury to agree upon a verdict. In all of these cases, and perhaps others not now called to mind, the discharge of the jury will not operate to bar a further prosecution because it is of necessity.

In the case now before us the jeopardy unquestionably attached. There was no necessity for the discharge of the jury. The guilt or innocence of the appellant could have been properly declared under the indictment upon which he was then being tried.

It would be exceedingly dangerous to leave this organic right to rest, for its proper protection, upon the mere will, or even discretion, of the trial court, however pure and elevated the judicial character might be; and no interference by the State, after the jury has charge of the case, can be tolerated unless upon facts establishing a case of necessity or by consent of the accused. (Stewart v. The State, 15 Ohio St., 155; Bishop on Criminal Law, section 995.)

The last-named writer says that the accused may waive his right to object to a second jeopardy, and that the waiver may be express or implied.

"If, during a trial, the jury is discharged with the prisoner's concurrence, this consent to the discharge is, by implication, a waiver of any objection to being tried anew, and he may be so tried. Even the consent to the discharge may appear by implication from the circumstances, as well as by express words." (1 Bishop on Criminal Law, section 998.)

In this instance, however, there was no express consent by the appellant to the discharge of the jury, nor any circumstances from which a consent can be properly implied. He was merely silent. The rule should not be extended so far as to require him, for the protection of this organic right, to object to the action of the court. If, upon the motion of the attorney for the Common-

wealth, a *nolle prosequi* had been entered at the stage of the trial when the former indictment against the appellant was dismissed, it would certainly have operated to bar any further prosecution for the same offense, although the appellant might not have objected to it. If sane he certainly would not have done so; and a discharge of the jury by the court, after jeopardy has attached, should have the same effect, save in cases of necessity—this exception being necessary to the administration of justice.

The lower court should, upon the record as now presented, have instructed the jury to find for the appellant, and the judgment is reversed, and cause remanded for a new trial consistent with this opinion.