## GORI *v.* UNITED STATES.

No. 486. Argued May 3, 1961.—
Decided June 12, 1961.

*Harry I. Rand* argued the cause for petitioner. With him on the brief were *Milton C. Weisman* and *Jerome Lewis.*

*Beatrice Rosenberg* argued the cause for the United States. With her on the briefs were former *Solicitor General Rankin, Solicitor General Cox, Assistant Attorney General Miller* and *Assistant Attorney General Wilkey.*

*Emanuel Redfield* filed a brief for the New York Civil Liberties Union, as *amicus curiae,* urging reversal.

Opinion of the Court, by MR. JUSTICE FRANKFURTER, announced by MR. JUSTICE CLARK.

In view of this Court's prior decisions, our limited grant of certiorari in this case [1] brings a narrow question here. We are to determine whether, in the particular circumstances of this record, petitioner's conviction at his sec-

---

[1] 364 U. S. 917.

ond trial [2] for violation of 18 U. S. C. § 659,[3] after his first trial had been terminated by the trial judge's declaration of a mistrial *sua sponte* and without petitioner's "active and express consent," [4] violates the Fifth Amendment's prohibition of double jeopardy. The Court of Appeals for the Second Circuit *in banc* affirmed petitioner's conviction (one judge dissenting), holding his constitutional objection without merit. 282 F. 2d 43. We agree that the Fifth Amendment does not require a contrary result.[5]

Petitioner was brought to trial before a jury in the District Court for the Eastern District of New York on February 4, 1959, on an information charging that he had knowingly received and possessed goods stolen in interstate commerce. That same afternoon, during the direct examination of the fourth witness for the Government, the presiding judge, on his own motion and with neither approval nor objection by petitioner's counsel,[6] withdrew a juror and declared a mistrial. It is unclear what reasons caused the court to take this action, which the Court of Appeals characterized as "overassiduous" and criticized

---

[2] Prior to the proceedings in the two trials which are relevant for present purposes, denominated the "first" and "second" trials herein, there had been a mistrial granted upon motion of petitioner.

[3] The statute makes unlawful, *inter alia,* the receipt or possession of any goods stolen from a vehicle and moving as, or constituting, an interstate shipment of freight, knowing the goods to be stolen.

[4] 282 F. 2d 43, 46.

[5] We cannot, of course, determine what result would obtain had the Court of Appeals, in light of its close acquaintance with the local situation, decided that petitioner's mistrial operated to bar his further prosecution, and were such a decision before us.

[6] In light of our disposition, we need not reach the Government's suggestion that petitioner's failure to object to the mistrial adversely affects his claim. We note petitioner's argument that, because of the precipitous course of events, there was no opportunity for such objection.

as premature.[7]   Apparently the trial judge inferred that
the prosecuting attorney's line of questioning presaged
inquiry calculated to inform the jury of other crimes
by the accused, and took action to forestall it.   In
any event, it is obvious, as the Court of Appeals
concluded, that the judge "was acting according to his
convictions in protecting the rights of the accused."   282
F. 2d, at 46.   The court below did not hold the mis-
trial ruling erroneous or an abuse of discretion.   It did
find the prosecutor's conduct unexceptionable and the
reason for the mistrial, therefore, not "entirely clear."
It did say that "the judge should have awaited a definite
question which would have permitted a clear-cut ruling,"
and that, in failing to do so, he displayed an "overzealous-
ness" and acted "too hastily."   *Id.*, at 46, 48.   But after
discussing the wide range of discretion which the "funda-
mental concepts of the federal administration of criminal
justice" allow to the trial judge in determining whether or
not a mistrial is appropriate—a responsibility which "is
particularly acute in the avoidance of prejudice arising
from nuances in the heated atmosphere of trial, which
cannot be fully depicted in the cold record on appeal," *id.*,
at 47—and the corresponding affirmative responsibility for
the conduct of a criminal trial which the federal precedents
impose, it concluded:

> "On this basis we do not believe decision should
> be difficult, for the responsibility and discretion exer-

---

[7] "The colloquy [immediately preceding the mistrial] . . . demon-
strates that the prosecutor did nothing to instigate the declaration
of a mistrial and that he was only performing his assigned duty under
trying conditions.   This is borne out by the entire transcript, includ-
ing also that covering the morning session.   Nor does it make entirely
clear the reasons which led the judge to act, though the parties
appear agreed that he intended to prevent the prosecutor from bring-
ing out evidence of other crimes by the accused.   Even so, the judge
should have awaited a definite question which would have permitted
a clear-cut ruling. . . ."   282 F. 2d, at 46.

cised by the judges below seem to us sound. . . ."
*Id.,* at 48.

Certainly, on the skimpy record before us [8] it would exceed the appropriate scope of review were we ourselves to attempt to pass an independent judgment upon the propriety of the mistrial, even should we be prone to do so—as we are not, with due regard for the guiding familiarity with district judges and with district court conditions possessed by the Courts of Appeals.

On March 9, 1959, petitioner moved to dismiss the information on the ground that to try him again would constitute double jeopardy. The motion was denied and he was retried in April. He now attacks the conviction in which the second trial resulted.

In this state of the record, we are not required to pass upon the broad contentions pressed, respectively, by counsel for petitioner and for the Government. The case is one in which, viewing it most favorably to petitioner, the mistrial order upon which his claim of jeopardy is based was found neither apparently justified nor clearly erroneous by the Court of Appeals in its review of a cold record. What that court did find and what is unquestionable is that the order was the product of the trial judge's extreme solicitude—an overeager solicitude, it may be—in favor of the accused.

Since 1824 it has been settled law in this Court that "The double-jeopardy provision of the Fifth Amend-

---

[8] The record here contains, with respect to the February 4 trial, two paragraphs from the Government's opening, four paragraphs from the petitioner's opening, a six-line colloquy between the court and prosecuting counsel, a portion of the examination of the third of the Government's first three witnesses, and the entire transcript of the testimony of the fourth witness. The last two items are set out in the affidavit of the Assistant United States Attorney in opposition to petitioner's motion to dismiss the information following the mistrial.

ment . . . does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment." *Wade* v. *Hunter,* 336 U. S. 684, 688. *United States* v. *Perez,* 9 Wheat. 579; *Thompson* v. *United States,* 155 U. S. 271; *Keerl* v. *Montana,* 213 U. S. 135, 137–138; see *Ex parte Lange,* 18 Wall. 163, 173–174; *Green* v. *United States,* 355 U. S. 184, 188. Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment. *Simmons* v. *United States,* 142 U. S. 148; *Logan* v. *United States,* 144 U. S. 263; *Dreyer* v. *Illinois,* 187 U. S. 71, 85–86. It is also clear that "This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served . . . ," *Brock* v. *North Carolina,* 344 U. S. 424, 427,[9] and that we have consistently declined to scrutinize with sharp surveillance the exercise of that discretion. See *Lovato* v. *New Mexico,* 242 U. S. 199; cf. *Wade* v. *Hunter, supra.* In the *Perez* case, the authoritative starting point of our law in this field, Mr. Justice Story, for a unanimous Court, thus stated the principles which have since guided the federal courts in their application of the concept of double jeopardy to situations giving rise to mistrials:

> ". . . We think, that in all cases of this nature, the law has invested Courts of justice with the authority

---

[9] *Brock* v. *North Carolina* was a state prosecution and therefore arose, of course, under the Due Process Clause of the Fourteenth Amendment. The passage quoted from *Brock,* however, related to the application in federal prosecutions of the double jeopardy provision of the Fifth.

to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office. . . ." 9 Wheat., at 580.

The present case falls within these broad considerations. Judicial wisdom counsels against anticipating hypothetical situations in which the discretion of the trial judge may be abused and so call for the safeguard of the Fifth Amendment—cases in which the defendant would be harassed by successive, oppressive prosecutions, or in which a judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused. Suffice that we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial. It would hark back to the formalistic artificialities of seventeenth century criminal procedure so to confine our federal trial courts by compelling them to navigate a narrow compass between Scylla and Charybdis. We would not thus make them unduly hesitant

conscientiously to exercise their most sensitive judgment—according to their own lights in the immediate exigencies of trial—for the more effective protection of the criminal accused.

*Affirmed.*

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE, MR. JUSTICE BLACK and MR. JUSTICE BRENNAN concur, dissenting.

The place one comes out, when faced with the problem of this case, depends largely on where one starts.

Today the Court phrases the problem in terms of whether a mistrial has been granted "to help the prosecution" on the one hand or "in the sole interest of the defendant" on the other. The former is plainly in violation of the provision of the Fifth Amendment that no person shall ". . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." That was what we said in *Green* v. *United States,* 355 U. S. 184, 188. But not until today, I believe, have we ever intimated that a mistrial ordered "in the sole interest of the defendant" was no bar to a second trial where the mistrial was not ordered at the request of the defendant or with his consent. Yet that is the situation presented here, for the Court of Appeals found that the trial judge "was acting according to his convictions in protecting the rights of the accused." [1]

There are occasions where a second trial may be had, although the jury which was impanelled for the first trial was discharged without reaching a verdict and without the defendant's consent. Mistrial because the jury was unable to agree is the classic example; and that was the criti-

---

[1] In this case the trial judge said:

"I declare a mistrial and I don't care whether the action is dismissed or not. I declare a mistrial because of the conduct of the district attorney."

cal circumstance in *United States* v. *Perez,* 9 Wheat. 515; *Logan* v. *United States,* 144 U. S. 263; *Dreyer* v. *Illinois,* 187 U. S. 71; *Moss* v. *Glenn,* 189 U. S. 506; *Keerl* v. *Montana,* 213 U. S. 135. Tactical situations of an army in the field have been held to justify the withdrawal of a court-martial proceeding and the institution of another one in calmer days. *Wade* v. *Hunter,* 336 U. S. 684. Discovery by the judge during the trial that "one or more members of a jury might be biased against the Government or the defendant" has been held to warrant discharge of the jury and direction of a new trial. *Id.,* 689. And see *Simmons* v. *United States,* 142 U. S. 148; *Thompson* v. *United States,* 155 U. S. 271. That is to say, "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." [2] *Wade* v. *Hunter, supra,* 689. While the matter is said to be in the sound discretion of the trial court, that discretion has some guidelines—"a trial can be discontinued when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice." *Id.,* 690.

To date these exceptions have been narrowly confined. Once a jury has been impanelled and sworn, jeopardy attaches and a subsequent prosecution is barred, if a mistrial is ordered—absent a showing of imperious necessity.[3] As stated by Mr. Justice Story in *United States* v.

---

[2] In *Lovato* v. *New Mexico,* 242 U. S. 199, 201, the jury was dismissed so that the defendant could be arraigned and could plead; and it was then impanelled again. The case stands for no more than the settled proposition that "a mere irregularity of procedure" does not always amount to double jeopardy.

[3] See *United States* v. *Watson,* 28 Fed. Cas. 499; *United States* v. *Whitlow,* 110 F. Supp. 871; *Ex parte Ulrich,* 42 F. 587.

In state cases, a second prosecution has been barred where the jury was discharged through the trial judge's misconstruction of the law. *Jackson* v. *Superior Court,* 10 Cal. 2d 350, 74 P. 2d 243, 113 A. L. R.

*Coolidge,* 25 Fed. Cas. 622, the discretion is to be exercised "only in very extraordinary and striking circumstances."

That is my starting point. I read the Double Jeopardy Clause as applying a strict standard. "The prohibition is not against being twice punished; but against being twice put in jeopardy." *United States* v. *Ball,* 163 U. S. 662, 669. It is designed to help equalize the position of government and the individual, to discourage abusive use of the awesome power of society. Once a trial starts jeopardy attaches. The prosecution must stand or fall on its performance at the trial. I do not see how a mistrial directed because the prosecutor has no witnesses is different from a mistrial directed because the prosecutor abuses his office and is guilty of misconduct. In neither is there a breakdown in judicial machinery such as happens when the judge is stricken, or a juror has been discovered to be disqualified to sit, or when it is impossible

---

1422; *State* v. *Spayde,* 110 Iowa 726, 80 N. W. 1058; *State* v. *Callendine,* 8 Iowa 288; *Lillard* v. *Commonwealth,* 267 S. W. 2d 712 (Ky.); *Mullins* v. *Commonwealth,* 258 Ky. 529, 80 S. W. 2d 606; *Robinson* v. *Commonwealth,* 88 Ky. 386, 11 S. W. 210; *Williams* v. *Commonwealth,* 78 Ky. 93; *Yarbrough* v. *State,* 90 Okla. Cr. 74, 210 P. 2d 375; *Loyd* v. *State,* 6 Okla. Cr. 76, 116 P. 959.

Where the trial judge has made a mistake in concluding that the jury was illegally impanelled, or biased, a second prosecution has been barred. *Whitmore* v. *State,* 43 Ark. 271; *Gillespie* v. *State,* 168 Ind. 298, 80 N. E. 829; *O'Brian* v. *Commonwealth,* 72 Ky. 333; *People* v. *Parker,* 145 Mich. 488, 108 N. W. 999; *State* v. *Nelson,* 19 R. I. 467; *State* v. *M'Kee,* 17 S. C. L. (1 Bail.) 651, 21 Am. Dec. 499; *Tomasson* v. *State,* 112 Tenn. 596, 79 S. W. 802. See also *Hilands* v. *Commonwealth,* 111 Pa. St. 1, 2 A. 70, 56 Am. Rep. 235, as limited by *Commonwealth* v. *Simpson,* 310 Pa. 380, 165 A. 498. Cf. *Maden* v. *Emmons,* 83 Ind. 331.

The accused has also been discharged where the trial judge erred in his estimate of the prejudicial quality of the remarks made by counsel for the accused, *Armentrout* v. *State,* 214 Ind. 273, 15 N. E. 2d 363, or of the jurors' drinking beer which had been brought in by the bailiff. *State* v. *Leunig,* 42 Ind. 541.

or impractical to hold a trial at the time and place set. The question is not, as the Court of Appeals thought, whether a defendant is "to receive absolution for his crime." 282 F. 2d 43, 48. The policy of the Bill of Rights is to make rare indeed the occasions when the citizen can for the same offense be required to run the gantlet twice. The risk of judicial arbitrariness rests where, in my view, the Constitution puts it—on the Government.