**UNITED STATES of America, Plaintiff,**

v.

**John O'C. FITZ GERALD, Defendant.**

**No. 60 CR 188.**

United States District Court
N. D. Illinois, E. D.

Jan. 30, 1962.

James P. O'Brien, U. S. Atty., for plaintiff.

John O'C. Fitz Gerald, pro se, Charles F. Marino, Chicago, Ill., for defendant.

ROBSON, District Judge.

Defendant, charged upon information with violation of the income tax laws (26 U.S.C. § 7203) for failure to file income tax returns for 1954 and 1955, seeks by a motion in the alternative for

(a) a judgment of acquittal on the offenses charged in the information filed, or

(b) an order discharging him from further prosecution for the alleged offense, or

(c) an order dismissing the information with prejudice.

The situation out of which this motion arose was that on June 6, 1961, after some thirteen trial days, the jury began their deliberations at approximately 4:00 p. m. After the jury retired, it is stated that this colloquy occurred in chambers, with defendant and both counsel present:

"THE COURT: Now what about this jury? Are you folks willing to agree that in the event they reach a verdict they may sign and seal and separate, and the verdict will be read here tomorrow morning?

"MR. FITZ GERALD: We agree.

"MR. SILETS: That is agreeable with the Government.

"THE COURT: All right."

Thereafter there was a further colloquy.

"MR. SILETS: Judge, we were just thinking if the jury gets hung that there is no way for the Court to give them Allen case instruction which talked about deliberations.

"THE COURT: They are not going to be hung. They can bring the verdict in by ten o'clock or they don't have that verdict.

"MR. FITZ GERALD: I am sure they will.

"THE COURT: I am not going to keep the jury out all night.

"MR. FITZ GERALD: I am not joining in that, Your Honor.

"THE COURT: You are not joining in what?

"MR. FITZ GERALD: At the request that the Court give that Allen instruction.

"MR. SILETS: May I inquire as to the procedure? Mr. White indicated that if they don't return a verdict they will be discharged?

"THE COURT: At ten o'clock.

"MR. SILETS: What time are they to take?

"THE COURT: Until ten o'clock.

"MR. SILETS: Until ten o'clock.

"THE COURT: Yes, at ten o'clock tonight.

"MR. SILETS: Oh, I thought it would be tomorrow morning?

"THE COURT: No, I wouldn't keep a jury locked up like that. If they don't reach a verdict by ten o'clock, there is no verdict.

"MR. SILETS: Then we would have to try it again?

"THE COURT: Yes, sir.

"MR. SILETS: Okay."

■ The Court is of the opinion there is no legal basis for the instant motion in any of its alternative phases and it is therefore denied. The principle of law applicable was clearly expounded by the United States Supreme Court in 1824 and has remained unchanged. That Court in United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165, said:

"The prisoner, Joseph Perez, was put upon trial for a capital offence, and the jury, being unable to agree, were discharged by the court from giving any verdict upon the indictment, without the consent of the prisoner, or of the attorney for the United States. * * * The question, therefore, arises, whether the discharge of the jury, by the court, from giving any verdict upon the indictment, with which they were charged, without the consent of the prisoner, is a bar to any future trial for the same offence. If it be, then he is entitled to be discharged from custody; if not, then he ought to be held in imprisonment until such trial can be had.

"We are of opinion, that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defence. We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in

this, as in other cases, upon the responsibility of the judges, under their oaths of office. We are aware, that there is some diversity of opinion and practice on this subject, in the American courts; but, after weighing the question with due deliberation, we are of opinion, that such a discharge constitutes no bar to further proceedings, and gives no right of exemption to the prisoner from being again put upon trial."

Most recently the Supreme Court has reiterated the above doctrine in Gori v. United States, 367 U.S. 364, at page 367, 81 S.Ct. 1523, at page 1526, 6 L.Ed.2d 901 (1961), saying:

"Since 1824 it has been settled law in this Court that 'The double-jeopardy provision of the Fifth Amendment * * * does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment.'"

As dictum it was said in Green v. United States, 355 U.S. 184, 188, 78 S. Ct. 221, 2 L.Ed.2d 199 (1957):

"Moreover it is not even essential that a verdict of guilt or innocence be returned for a defendant to have once been placed in jeopardy so as to bar a second trial on the same charge. This Court, as well as most others, has taken the position that a defendant is placed in jeopardy once he is put to trial before a jury so that if the jury is discharged without his consent he cannot be tried again. * * * This prevents a prosecutor or judge from subjecting a defendant to a second prosecution by discontinuing the trial when it appears that the jury might not convict. *At the same time jeopardy is not regarded as having come to an end so as to bar a second trial in those cases where 'unforeseeable circumstances * * * arise during [the first] trial making its completion impossible, such as the failure of a jury to agree on a verdict.'*" (Emphasis ours.)

In Dreyer v. Illinois, 187 U.S. 71, 23 S.Ct. 28, 47 L.Ed. 79 (1902), it was decided that if the jury in a criminal cause be discharged by the court because of their being unable to agree upon a verdict, the accused, if tried a second time, cannot be said to have been put twice in jeopardy of life or limb, whether regard be had to the Fifth or the Fourteenth Amendment. In that case, the cause was submitted to the jury at four o'clock in the afternoon and the jury was kept together until nine o'clock, and thirty minutes in the morning of the succeeding day, when they were finally discharged from any further consideration of the case. The contention was made that notwithstanding the recital in the record that the jury was discharged by the court because they were unable to agree upon a verdict, such discharge was without moral or physical necessity and operated as an acquittal of the defendant. The Court held the Perez case, supra, applicable, leading to a conclusion "adverse to the contention of the accused that he was put twice in jeopardy."

Very recently the Second Circuit Court of Appeals held in United States v. Cording, 290 F.2d 392, 393 (1961) that

"Since the jury had declared its inability to agree on a verdict, the action of the court in discharging the jury was a proper exercise of its discretion. In these circumstances it is well established that a second trial may be had without running afoul of the prohibition against double jeopardy."

■ Defendant assails the trial court's action, asserting that the jury was permitted to deliberate a total of only about five hours; that it was an unwarranted delegation of authority by the trial judge to his minute clerk to discharge the jury; that the jury was discharged without defendant's consent and out of the presence of the defendant, counsel and the Court.

The colloquy quoted above, however, discloses that the trial judge made a deliberate decision as to when the jury should be discharged for failure to agree,

**518**

that it was the trial judge's decision and not his minute clerk's, that it was announced in the presence of counsel. It is clear that it was not done at a moment when it was believed the jury was about to acquit the defendant and therefore knowingly deprived him of an acquittal.

The Court therefore concludes that Judge Igoe exercised the discretion lodged in him in accordance with the best dictates of his judgment. The discharge of the jury pursuant to his order was valid and defendant is not being subjected to a second trial in violation of his constitutional right not to be subjected to double jeopardy for the same offense.

The motion in all its alternatives is denied.