**UNITED STATES of America**

**v.**

**William Henry BURDICK.**

**Crim. No. 22487.**

United States District Court
E. D. Pennsylvania.

May 31, 1968.

Herman I. Pollack, Voluntary Defender, Melvin M. Dildine, Asst. Voluntary Defender, Philadelphia, Pa., for petitioner.

Drew J. T. O'Keefe, U.S. Atty., John R. Galloway Asst. U.S. Atty., Philadelphia, Pa., for respondent.

## MEMORANDUM OPINION

WEINER, District Judge.

Petitioner was indicted on one count by a federal grand jury for knowingly and willfully concealing the material fact of prior criminal arrests in his application for work with Philco-Ford Corporation in relation to a job requiring government security clearance. The date of the offense as charged is June 4, 1965. The prior arrests occurred between December 22, 1945 and September 5, 1956. The indictment is under 18 U. S.C. § 1001.

Trial was first commenced on January 8, 1968. Prosecution completed its case in chief without ever offering any material into evidence. Defendant-petitioner then moved for a judgment of acquittal, pursuant to Fed.R.Crim.P. 29(a). The judge reserved decision, and requested defendant to proceed with his case. The following day, the court sua sponte moved for the withdrawal of a juror, and a mistrial was declared.

Petitioner's case was subsequently set down again for trial, and petitioner consequently filed this motion to dismiss the indictment against him on the grounds that a second trial would violate his Fifth Amendment guarantee against twice being put in jeopardy.

Where, as in the earlier trial, a judge, on his own motion and without the approval or objection of defense counsel, withdraws a juror and declares a mistrial, "due to certain errors that might ap-

pear in the record and which might prejudice the rights of the defendant," [1] the law seems presently in a state of development.

In a leading case of October Term, 1960, Mr. Justice Frankfurter, writing for the majority of five, expounded as follows:

Where, for reasons deemed compelling by a trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be re-tried consistently with the Fifth Amendment.

Gori v. United States, 367 U.S. 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961). In dissent, Mr. Justice Douglas, writing for himself, the Chief Justice, and Justices Black and Brennan, acknowledged that "[t]he place one comes out, when faced with the problem of this case, depends largely on where one starts," id. at 370, 81 S.Ct. at 1527. Continuing, he explained his view, that only " 'very extraordinary and striking circumstances,' " (quoting Mr. Justice Story in United States v. Coolidge, 25 F.Cas.No. 14, 858, pp. 622, 623 (1815)) such as a breakdown in judicial machinery,[2] could qualify as one of those occasions, "rare indeed * * * when the citizen can for the same offense be required to run the gantlet twice," id. 367 U.S. at 372–373, 81 S.Ct. at 1528.

*Gori,* in the words of one commentary, may well "have marked the apogee of [the] permissive attitude" in favor of reprosecution, Note, Double Jeopardy: the Reprosecution Problem, 77 Harv.L. Rev. 1272, 1277 (1964). In Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), Mr. Justice Douglas wrote an opinion for a new majority of five that closely tracks his dissent in *Gori.* In *Downum,* to be sure, the situation was factually distinguishable from *Gori* in that, in the former, the prosecution asked that the jury be discharged because of the absence of one of its key witnesses, whereas, in the latter, the judge declared a mistrial on his own motion. We agree, however, with the Note in the Harvard Law Review on this subject where it underscores the

fundamentally different view of the scope of double jeopardy [which] separates the opinions of Mr. Justice Douglas from those of Justices Frankfurter and Clark [the latter Justice dissenting in *Downum* at 739, joined by Justices Harlan, Stewart, and White]. Mr. Justice Douglas, and apparently a majority of the current Court, seems more anxious about the burden imposed on the accused by reprosecution and less concerned with vindicating society's interest in convicting the guilty than do the *Downum* dissenters.

Note, Double Jeopardy: the Reprosecution Problem, 77 Harv.L.Rev. 1272, 1279 (1964).

In our view, there has been an essential shift in emphasis, between *Gori* and *Downum,* in the Supreme Court's treatment of the constitutional guarantee against double jeopardy. We are in sympathy with this strengthened conviction that defendants should be twice placed in jeopardy " 'only in very extraordinary and striking circumstances,' " Gori v. United States, supra 367 U.S. at 372, 81 S.Ct. at 1528 (Douglas, J., dissenting), and Downum v. United States, supra 372 U.S. at 736, 83

---

1. Notes of testimony at 167.

2. See, e. g., United States v. Perez, 22 U.S. (9 Wheat.) 579, 581, 6 L.Ed. 165 (1824); Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949), and the cases cited in the discussion therein at 689–691, 69 S.Ct. at 837–838. Of course, there are situations other than a breakdown in judicial machinery which are simply beyond the scope of the guarantee against double jeopardy, such as the retrial of a defendant "whose conviction is set aside because of an error in the proceedings leading to conviction," United States v. Tateo, 377 U.S. 463, 465, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964).

S.Ct. 1033, both quoting United States v. Coolidge, supra 25 Fed.Cas. at 623 (Story, J.). In accordance with our understanding of the current law in this area, petitioner's motion must be granted.

One final word is in order. From the record before us, it appears that petitioner has had no arrests, apart from driving violations, since 1956. Thereafter, he seems to have led a distinctly regenerate life. In his own testimony, petitioner indicated to this court that he took correspondence courses in his field for five years; that he has been married since 1957; and that, at forty years of age, he is currently employed, working, as he had been with Philco and other concerns, with electronic field equipment.

Against this background, to press petitioner for reprosecution under the instant charge would appear to punish him out of all proportion to what his case would warrant.

The goal of rehabilitation is one of the most important constructive aims of the criminal law. While deterrence of criminal behavior raises the threshold of fear or reluctance which a potential criminal must overcome to commit a crime; and retribution in some sense attempts to deter future crimes with the spectre of a past criminal's just desserts; if a formerly anti-social citizen can be rehabilitated to lead a normal, productive life, this is an achievement that places him outside the sphere of criminal law and among the law-abiding citizenry. It seems hardly consonant with this achievement in the instant case to choose to indict and press for trial and retrial a man, such as petitioner before us, with a record of arrests now almost twelve years stale.

In any event, we believe that a correct reading of the current law dictates the instant result. It is additionally fortunate that the substantial equities of this particular case militate for the same outcome.

## ORDER

Petitioner's motion to dismiss the indictment against him on the grounds of double jeopardy is granted.

It is so ordered.