## Siegel v. Commonwealth.

(Decided October 19, 1917.)

### Appeal from Campbell Circuit Court.

1.   Criminal Law—Uttering Forged Check—Cold Check Law.—An endorser of a check, who, with intent to defraud, and with knowledge that the drawer has no funds in the bank upon which it is drawn to pay it when presented, and who utters or delivers it, is within the terms of the "cold check law."

2. Indictment and Information—Uttering Forged Check.—Under section 1213a, Kentucky Statutes, it is not necessary to allege in the indictment, that a bank to which a check is endorsed and to which it is uttered or delivered, is authorized by the laws of the United States or of some state or government.

3. Criminal Law—Former Jeopardy.—The prohibition of the common law and the constitutional and statutory provisions, declaratory of it, against putting one in jeopardy a second time, does not apply, except to a second prosecution for the same crime, both in law and fact, for which the first trial was had.

4. Criminal Law—Jeopardy.—A legal jeopardy exists when one is put upon trial before a court of competent jurisdiction upon an indictment or information, which is sufficient in form and substance to sustain a conviction, and a jury is empaneled and sworn to try him.

5. Criminal Law—Indictment and Information.—If what is alleged in the second indictment had been proven upon the trial of the first, and it was sufficient to sustain the indictment, then the two indictments are for the same offense, otherwise they are not.

HORACE W. ROOT for appellant.

CHARLES H. MORRIS, Attorney General, and D. M. HOWERTON, Assistant Attorney General, for appellee.

## OPINION OF THE COURT BY JUDGE HURT—Affirming.

This is a companion case to the one of the same style and between the same parties, which was decided by this court on the 2nd day of October, 1917, and in the opinion, in that case, many of the facts, upon which this case is based were stated, but as some of the important facts of this case were not essential to be stated in that opinion, and the appellant entered a plea of guilty, in that case, and a plea of not guilty, and a former trial and conviction in this case, it will be necessary to set out the facts of this case in order to a proper understanding of the questions raised, and a presentation of the reasons for the opinion of the court.

The indictment accused the appellant, I. Siegel, of the crime of "knowingly, fraudulently, unlawfully and feloniously uttering and delivering a check or order for the payment of money upon a bank, knowing at the time of such uttering and delivery that the maker or drawer had not sufficient funds in such bank for the payment of such check or order in full upon its presentation." The specifications of the indictment substantially charge, that the accused, with the intent to defraud, uttered and delivered to the German National Bank, of Newport, Kentucky, a

check drawn by J. Rubin & Co., in favor of M. Mosler, upon the Jefferson Trust Company, a banking institution of Hoboken, New Jersey, for the sum of eighty-three dollars and twenty-four cents, and which bore the endorsement of M. Mosler and the accused; that the amount of the check was credited to the accused in the German National Bank, and the accused, thereafter, by check, withdrew the funds from the bank and appropriated them to his own use; that J. Rubin & Co., the drawer of the check, did not have any funds in the bank upon which it was drawn for its payment upon presentation, and that this fact was known to the accused, at the time he delivered it for deposit, to his credit in the German National Bank; that when the check was presented to the Jefferson Trust Co. for payment, it refused to pay it, because the drawer had no funds therein to his credit, and that the accused, nor any one for him nor for the drawer nor the endorser of the check, paid the amount of the check to the German National Bank, within twenty days, after the accused had received actual notice of the dishonor of the check.

The trial resulted in his conviction by the jury, and the fixing of his penalty at confinement in the state reformatory for the period of two years, and the rendition by the court of a judgment in accordance with the verdict of the jury.

The motion for a new trial having been overruled, the dissatisfaction of the accused with the judgment has caused him to bring it by appeal to this court.

The grounds urged for a reversal of the judgment are, that the trial court erred to the substantial prejudice of the accused:

(1) In overruling his demurrer to the indictment.

(2) In failing to direct a verdict in his favor, upon his motion, at the conclusion of the evidence for the Commonwealth, and at the conclusion of all evidence.

(3) In failing to instruct the jury upon the entire law of the case.

(4) In admitting incompetent evidence against him and refusing to admit competent evidence in his behalf.

(a) The grounds, upon which it is urged that the demurrer to the indictment should have been sustained, are, that the indictment fails to state a public offense, in that the statute, section 1213a, Kentucky Statutes, and commonly called the "Cold Check Law," does not make it an offense for an endorser of a check or draft, with the

intent to defraud, to utter or deliver a check, knowing that the maker has not funds in the bank, upon which it is drawn, sufficient to pay it, upon presentation, but that the only person, whom the statute makes a felon for such an act is the maker or drawer of the check or draft. This objection to the sufficiency of the indictment, against an endorser of a check for such offense, was fully considered in the companion case to this above mentioned, and it was there held, that if the endorser of a check uttered or delivered it, with the intent to defraud, he was within the statute and incurred the penalty therein denounced, and it will not be necessary to further consider that subject, here. The second objection urged to the sufficiency of the indictment is that it does not charge, that the accused nor any one in his behalf paid the check within twenty days after he had received actual notice of its dishonor. An examination of the indictment shows that such allegation was expressly made.

(b) It is urged that the court erred in overruling the motion of the accused for a directed verdict in his favor, because:

(1) The evidence failed to show that the accused knew at the time he uttered and delivered the check to the German National Bank that J. Rubin & Co., the maker of the check, did not have funds in the Jefferson Trust Company sufficient to pay it.

(2) The evidence failed to show that the German National Bank was authorized by the laws of the United States or of any state or government.

(3) Because the uncontradicted evidence showed that he had suffered a former trial and conviction for the same offense of which he was accused in the indictment.

Touching these alleged grounds for a directed verdict, a statement of the facts, as developed by the evidence, is necessary. The first appearance of the accused in Newport, so far as the evidence indicates, was on the 13th day of December, 1916, when he pretended to rent from a lady, in that city, a building, stating that he desired it, in which to conduct a dry goods store. He paid to the lady, as an earnest on the rent, the sum of two dollars, and placed a placard on the front of the building, announcing, that in a very few days, he would open a dry goods store in the building, and he, also, in his conversation with the lady, when he made the rental contract for the building, mentioned about the character of the goods, which he was intending to place in the building, and as-

sured the lady, that she would have in him a permanent tenant. He immediately placed the placard in the front of the building and departed, and this was the last time the lady saw or heard of him, and he never placed any merchandise of any kind in the room. On the day following, which was December 14th, he entered the business place of the German National Bank, in Newport, and there deposited to his credit, in money, the sum of one hundred and fifty-five dollars. When asked by the teller of the bank for his signature, and address, he said that he would give them his ''business address,'' and thereupon wrote his name, with the number and street of the store house, which he had pretended to rent. On the 15th day of December, he returned to the bank and made a deposit of fifty dollars, in money. On .the 16th day of December, he deposited the further sum of fifteen dollars. On the 18th day of December, he came into the bank and made a deposit to his credit of the two checks. One was drawn by J. Rubin & Co. on the Jefferson Trust Company, for the sum of eighty-three dollars and twenty-four cents, and payable to M. Mosler and endorsed by Mosler and also by the accused. The other check had been apparently drawn by J. Breslau & Sons, on the Richmond Borough National Bank, of Stapleton, New York, for the sum of ninety-six dollars and three cents, and was payable to H. Horowitz. It bore the endorsement of Horowitz and, also, the accused. The accused was given credit by the bank for the amount of the two checks, and the checks were then sent forward for collection to the banks upon which they were drawn, but in three or four days were returned, with statements that the parties, who had drawn the checks, did not have any funds deposited to their credits, and never had accounts with them. Immediately, search was made for the accused, but he could not be found, at the place, where he pretended, that he was engaged in business, nor any other place in Newport. However, before the checks were returned to the German National Bank, the accused had drawn checks against his account to the amount of three hundred and ninety-four dollars and ninety cents, which had been honored, leaving only four dollars and twenty-eight cents to his credit, which he never called for. After some time, by the aid of detective agencies, he was found to be in Chicago, where he was arrested upon the charge for which he was convicted. He stoutly resisted extradition to this state to answer the charges, and upon one hearing in Chi-

cago, before a court, testified that he had never at any time been in Newport, and was not the individual who had defrauded the bank by the means of the checks. While being returned to Newport and, also, while at Chicago, he stated to the agent of this state, a deputy sheriff named Imfield, in substance, that he knew that he had done wrong and that he wanted to fix the matter, and that he knew that the checks which he had deposited with the bank were worthless. An indictment was found against him for uttering and delivering the check for ninety-six dollars and three cents, with the intent to defraud, as a violation of section 1213a, Kentucky Statutes, as well as the indictment, in the instant case, for uttering the eighty-four dollar and twenty-four cent check. He was brought to trial upon the first mentioned indictment in March, 1917, and first entered a plea of not guilty to it, but after the evidence for the Commonwealth had been heard, he withdrew the plea of not guilty and entered a plea of guilty and was convicted and judgment rendered, sentencing him to a term in the penitentiary of one year. It was this trial and conviction upon which he based his plea of a former trial and conviction, of the same offense, for which he was tried, in the instant case. The evidence showed that J. Rubin & Co. did not have any funds in the Jefferson Trust Company, when the accused deposited the check and never did have any funds there. The action of the appellant in pretending to have an intention of opening a mercantile business in Newport, and then checking out the entire amount of his deposit in the bank, including the amount of the checks, except a mere pittance, evidently intending to leave just enough to prevent arousing suspicion, and departing out of the city immediately after having deposited the checks, together with the denial of his identity when arrested, and his statement to the agent, that he knew the checks were worthless was ample evidence to require submission to the jury upon the question of his knowledge, at the time the check was deposited by him, that the drawer did not have funds in the payee bank to satisfy the check. By the terms of the statute, the uttering or delivering of a check, with knowledge that the drawer of it has not funds in the bank upon which it is drawn sufficient to pay the check, is *prima facie* evidence of the intention to defraud.

The contention, that he had theretofore been convicted of the same crime for which he was convicted, in the instant case, is not tenable. It goes without saying, that

after one has been tried and convicted or acquitted, he cannot again be put upon trial for the same offense. This was the common law, and section 13, of the Bill of Rights, provides, that "no person shall, for the same offense be twice put in jeopardy of his life or limb," and has, by decisions of this court, been extended to all felonies and to all cases where the punishment is infamous; Williams v. Com., 78 Ky. 93; Robinson v. Com., 88 Ky. 386; and section 176, Criminal Code, provides that "an acquittal by a judgment upon a verdict or a conviction shall bar another prosecution for the same offense. . . ." All courts are of one opinion, that where an individual has been once in legal jeopardy, he cannot again be put upon trial for the same offense. The prohibition of the common law and the constitutional and statutory provisions declaratory of the common law, upon that subject, against putting one in jeopardy a second time, do not apply, except to a second prosecution for the same crime, both in law and fact, for which the first trial was had. The principle stated in a general way, is that if there is one act, one intent and one volition, and the accused has been tried on a charge based on such act, intent and volition, a subsequent charge cannot be based upon it, although the crimes charged in the two proceedings are different. 8 R. C. L. 144. Mr. Cooley has defined legal jeopardy to exist, "when one is put upon trial before a court of competent jurisdiction upon an indictment or information, which is sufficient in form and substance to sustain a conviction," and a jury has been charged with his deliverance by being empaneled and sworn to try his case. This definition has been approved by this court in Williams v. Com., *supra;* Gaskins v. Com., 97 Ky. 494; Com. v. Goulet, 140 Ky. 843; Drake v. Com., 150 Ky. 374; Hughes v. Com., 131 Ky. 502; Collier v. Com., 110 Ky. 516; Huff v. Com., 19 R. 1064. The question in the instant case is: Did the act of the accused in uttering the two checks, at the same time and place and to the same person, constitute one offense or two offenses? If it constituted one offense, only, then the conviction for uttering the check, which was drawn upon the Richmond Borough National Bank, was a complete bar to the fraudulently uttering of the one, which was drawn upon the Jefferson Trust Company. In Fisher v. Com., 1 Bush 211, it was held, that stealing a horse, wagon and harness, by the same act, was only one offense, and an acquittal upon an indictment for stealing

the horse was a bar to a prosecution for stealing the harness or wagon. In Nichols v. Com., 78 Ky. 180, and Williams v. Com., *supra,* it was held that the act of stealing several articles, at the same time and place, was only one offense, although the articles had different owners. In Carman v. Com., 25 R. 1048, it was held, that a conviction of the offense of shooting, at random upon the public highway, was a bar to a prosecution for holding and flourishing a deadly weapon in a threatening manner, both prosecutions being based upon the same act. A conviction for a breach of the peace by committing an assault and battery is a bar to an indictment for an assault and battery based upon the same facts. Com. v. Miller, 5 Dana 322; Com. v. Foster, 3 Met. 1; Com. v. Hawkins, 11 Bush 604. Upon the other hand, it was held in Mann v. Com., 118 Ky. 67, that a conviction of the crime of burglary, for breaking into a dwelling house, at night, and taking money from the pocket of the proprietor, was not a bar to an indictment for maliciously shooting and wounding the proprietor at the same time. In Com. v. Vaughn, 101 Ky. 603, a conviction for furnishing liquor to a minor was held not to be a bar to a prosecution for selling the liquor without a license, although the sale was the same act as the furnishing upon which the conviction was had in the indictment for furnishing to a minor. In Hughes v. Com., 131 Ky. 502, a conviction for illegally registering as a voter was held not to be a bar to a prosecution for false swearing in obtaining the illegal registration. In Com. v. Bragg, 104 Ky. 306, it was held, that an acquittal upon an indictment for breaking into a warehouse, with the intent to steal, was not a bar to an indictment for receiving stolen goods, although they were the same goods which were stolen from the warehouse at its breaking. In Com. v. Anderson, 169 Ky. 372, Anderson shot and killed two men in the same affray, but by different shots, it was held, that a conviction upon an indictment for murder for killing one of the men was not a bar to a prosecution for killing the other. In Keeton v. Com., 92 Ky. 522, the accused robbed two men by drawing his pistol upon them at the same time and requiring them to give up their goods, and it was held that a conviction upon an indictment for robbing one of them was not a bar to the prosecution of an indictment for robbing the other. In Com. v. Browning, 146 Ky. 770, the accused had shot and wounded two men with the same shot, and it was held, that his convic-

tion for shooting one was not a bar to an indictment, which charged him with the crime of shooting and wounding the other. In Triplett v. Com., 87 Ky. 193, the accused was indicted for the crime of burglary, based upon the alleged fact, that he broke and entered the dwelling house of another at night, with the intent to commit a felony, and as proof of his intent, that he had taken from the house thirty dollars in money. His acquittal upon this charge was held to be a bar to an indictment accusing him of a larceny of the same thirty dollars. The court, in that case, said:·

"Where a criminal act has been committed, every part of which may be alleged in a single count of an indictment and proved under it, the act cannot be split into several distinct crimes and a separate indictment sustained upon each; and whenever there has been a conviction for one part, it will operate as a bar to any subsequent proceedings as to the residue."

It has often been held, that because two acts are so nearly connected in point of time, the evidence relating to both of them cannot be separated upon the trial for the one first had, does not make the conviction or acquittal of the one first tried a bar to the trial for the other act, when they are separate and distinct acts. The concrete rule to be deduced from the foregoing opinions, by which to determine, whether the acts, committed at the same time and place, constitute one or more offenses, is, if what is set out in the second indictment had been proven on the trial of the first indictment, and it sustains the indictment, then the two indictments are for the same offense. If what is set out in the second indictment, when proven upon the trial of the first will not sustain it, then they are distinct offenses, and the conviction or acquittal of either is not a bar to the other. Hughes v. Com., 131 Ky. 502; Turner v. Com., 19 R. 1161; Com. v. Vaughn, 101 Ky. 603; 12 Cyc. 280; 8 R. C. L. 148. It will be observed, that the contention that the conviction, which is relied upon, as a bar to the prosecution, was for uttering a check drawn by J. Breslau & Sons, upon the Richmond Borough National Bank, in favor of one Horowitz, while the indictment, in the instant case, was for uttering a check drawn by J. Rubin & Co. in favor of M. Mosler, and upon the Jefferson Trust Company. Although the appellant fraudulently uttered the two· checks, at the same time, place and to the same person, it is readily apparent, that when put

upon trial on account of the check drawn by J. Breslau & Sons, he was never in legal jeopardy for the offense for which he was convicted, in the instant case, under the rule stated by Mr. Cooley; nor could the facts in regard to both checks have been properly stated in one count of an indictment; nor proved under it, as said in Triplett v. Com., *supra;* nor could the facts stated in the indictment, in this case, have sustained the former indictment, if they had been offered in proof at the trial of it, for it would not be possible to sustain an indictment, which charged the uttering or delivery of a check, with intent to defraud, made by J. Breslau & Sons, to H. Horowitz, on the Richmond Borough National Bank, with knowledge that the maker had no funds therein to pay it, by proof, that the accused had uttered or delivered a check drawn by J. Rubin & Co. in favor of M. Mosler upon the Jefferson Trust Company, with knowledge that the maker had no funds in that bank to pay it. Hence, the conviction under the first indictment was not a bar to the latter.

The contention that the court ought to have directed a verdict in favor of appellant, because there was no evidence to sustain the averment in the indictment, that the German National Bank was duly authorized by the laws of the United States, is equally untenable. The decisions in Com. v. Miller, 115 S. W. 234, and Mason v. Com., 156 Ky. 493, relied upon by appellant, were decisions construing section 1189, Kentucky Statutes. It was held in those cases and in Kennedy v. Com., 2 Met. 36; Com. v. Lee, 18 R. 484; Rawlins v. Com. 7 R. 595, and others, that the statute, *supra,* only made it an offense for forging or uttering a forged bank check, in the event the bank upon which it was drawn or to which it was uttered was a bank authorized by the laws of the United States or some state or government. It being necessary under that statute to make the allegation in the indictment, that the bank was one which had been authorized by the laws of the United States or some state or government, it was, also, necessary to support it by proof, but section 1213a, *supra,* with reference to the bank or depository upon which a check is drawn or to which it is uttered or delivered, with the intent to defraud, does not contain the language, ''authorized by law of the United States or any state of the United States or any foreign government,'' as section 1189, *supra,* does. Hence, the averment in the indictment, that the German

National Bank was duly authorized to do business by the laws of the United States was mere surplusage and immaterial, and the plea of not guilty by appellant did not put in issue such immaterial allegation. Section 175, Criminal Code.

(c) Upon the trial, evidence was heard for appellant to the effect, that on the first day of February, 1917, the wife of appellant, presumably as his agent, offered to pay to the German National Bank the sum of the two checks, and that the employes of the bank refused to receive the payment, and so announced. This evidence was disputed by the employes of the bank. Appellant now insists that the court should have instructed the jury, that if the appellant, or any one for him, offered to pay to the bank the amount of the checks within twenty days after he had received actual notice of their dishonor and same had been refused by the bank, to find the appellant not guilty, and that the court erred in failing to give such instruction. The uncontradicted evidence shows, that appellant had been arrested on the charge in the indictment, before the 10th day of February, and had thus and otherwise received actual notice of the dishonor of the checks before that date. The evidence for appellant, the truth of which was disputed, shows that no offer was made to pay the checks by any one, until on the 1st day of February. Thus the proof shows that if any offer was made to pay the checks, it was not made within twenty days of his notice of their dishonor, and hence there was nothing to submit to the jury upon that subject.

(d) An examination of the evidence does not disclose anything proven or refused admission, which was prejudicial to the substantial rights of appellant.

The judgment is therefore affirmed.